| | |
|---|---|
| 6 | 171 |
| 52 | 591 |

WILSON AND HERR APPELLANTS, vs. RICHARD HAYWARD, APPELLEE.

1. In case of a mortgage to secure notes payable at different periods the note which first falls due has the prior right to be satisfied out of the mortgaged property, unless there is some peculiar equity attached to the notes of subsequent date, and so as to the other notes.

2. In case of sale by a prior incumbrancer, the subsequent incumbrancer can

only complain by showing fraud in the sale, or that the property was more than sufficient to pay both debts, and that something remains for his benefit

Appeal from a decree of the Circuit Court for Leon County, sitting in Chancery.

Richard Hayward filed his bill in the Court below against the appellants and D. C. Wilson, administrator of the estate of J. H. Lunn, deceased, alleging that J. H. Lunn in his life time, and in June, 1840, executed to one Robert K. West, five several promissory notes, each for the sum of one thousand dollars payable respectively on the fourth day of June, in the years 1841, '42, '43, '44 and '45, and to secure the payment thereof executed and delivered to said West a certain deed of mortgage covering a certain lot and premises in the city of Tallahassee; that on or about the sixth day of March, 1841, the said R. K. West assigned and delivered to him, Hayward, the one of said notes payable in June, 1845. and at the same time assigned and delivered to him the said mortgage. That J. H. Lunn died in 1841, and in October of that year, D. C. Wilson was appointed administrator of his estate.

He further alleges that Jos. C. Wilson and John H. Herr composing the firm of Wilson & Herr, having become the holders of three of the notes aforesaid given by said Lunn and secured by said mortgage, instituted after said notes became due, their suit by petition on the law side of the Superior Court for Leon County under the act to authorize the foreclosure of mortgages in the Courts of common law, and obtained a decree of foreclosure under which the mortgaged premises were sold and purchased by the said Wilson and Herr. That the said judgment and decree in the alleged suit for foreclosure were not and is not binding on him, because he was not made a party thereto, had no

notice of its institution, nor any opportunity to defend the same and to assert his rignts in the premises. That said decree was obtained by Wilson and Herr by collusion with D. C. Wilson or in their names for his use and benefit; that D. C. Wilson employed the counsel to institute the proceedings against himself for foreclosure, waived the filing of the petition in the Clerk's office four months before the first day of the term, waived the service of notice of intention to institute suit four months before the first day of the term at which decree was rendered and acknowledged it had been so given, when in fact it had not been given, waived the filing of the original deed of mortgage with the petition and the exhibition thereof to the Judge, required by the Statute to be so filed and exhibited, and substituted a copy thereof from the record of deeds of Leon County without accounting for the absence of the original, and he also waived the affidavit of petitioner or their agent or attorney as to the sum claimed to be due, which is required by the statute.— That the said D. C. Wilson not only wholly failed to make defence to said petition, but wrongfully and collusively allowed, suffered and permitted said judgment and decree to be entered up and passed immediately upon the filing of said petition.

Hayward further alleges in his bill, that the three notes held by Wilson and Herr, were received by them as collateral security, to secure the payment of a debt due to them by Robert K. West, and which debt was afterwards fully paid by West.

The bill concludes with a prayer for a foreclosure of said mortgage, and that the decree of foreclosure in favor of Wilson and Herr be vacated and set aside.

The note held by Hayward, and the mortgage afore-

said, were made exhibits and filed with the bill. On the mortgage is endorsed the following assignment:

"Whereas, Richard Hayward, has made himself responsible to Patterson and Hughes, for five thousand two hundred and fifty dollars, by endorsing his name on my paper, now in order to indemnify the said Hayward, and save him harmless, I do hereby transfer the within mortgage to him and for his use, until said debt and interest is satisfied.— Witness my hand this sixth day of March, 1841.

    Test: John Wilson.               R. K. WEST.

It was proved that Hayward had paid the debt to Patterson and Hughes, for which he was security for West.

David C. Wilson, administrator of Lunn, in his answer says, that on the first day of June, 1841 R. K. West being indebted to Wilson and Herr, in the sum of two thousand seven hundred and twenty-three 49-100 dollars, for which amount R. K. West had accepted their draft, dated 16 Sept., 1840, and being anxious to secure the same, and upon such security being given to obtain further credit, transferred to said Wilson and Herr three notes signed by J. H. Lunn for the amounts stated. That he being the correspondent and agent of Wilson and Herr and the manager and superintendent of their interest received from West the said notes as collateral for the payment of said amount of indnbtedness; that when said notes were offered he, defendant, was of opinion that said West produced and offered five notes of the same amount, executed by J. H. Lunn, all of which, as he supposes, were secured by the mortgage which West also held and produced at the same time; that the impression is strongly fixed on his mind that he saw the note held by Hayward, (if it is one of the five mentioned in the mortgage aforesaid) in the possession of West posterior to the

sixth day of March, 1841.   He therefore denies that the note was transferred to Hayward at the time stated and requires proof thereof, &c.   He further says that at the time he received the notes from West to secure Wilson and Herr, he carefully examined the mortgage and there was then no assignment thereon.

He admits that as agent of Wilson and Herr, and having in his possession the evidence of the debt from West, he employed Counsel for them and in their names to institute the proceedings to foreclose the mortgage mentioned in the bill of Complaint, but asserts that there was no propriety, necessity or justice in resisting a claim of which he had full knowledge, and from which there was no escape, and that he wished to save the expense which all attempts to delay or defeat the claim would have produced.   That at the sale of the mortgaged premises he caused the same to be purchased for Wilson and Herr and in their names, and that they are now the owners thereof.

Wilson and Herr allege in their answer that they became possessed of the three notes of J. H, Lunn by act of their agent, D. C. Wilson, who received them as collateral and to secure the payment of a draft of said Wilson and Herr, bearing date 16th of September, 1840, for two thousand seven hundred and twenty-three 49–100 dollars, drawn on R. K. West and accepted by him, that being the amount in which he stood indebted to them for goods furnished him previous to that time.   They further allege that no payments were made by said West or any other person for him and on his account on said debt, and the whole amount thereof evidenced by said acceptance was due at that time of the foreclosure of said Mortgage.   They admit that D. C. Wilson, as their agent, had their interests in charge and

that he placed their claim in the hands of Counsel for the purpose of instituting proceedings. West afterwards became indebted to Wilson and Herr in the further sum of $2336.26 for which they drew their draft which was accepted.

The draft drawn by Wilson and Herr on West, to secure which, the Lunn notes were assigned, was filed and is as follows:

BALTIMORE, 16th September, 1840.

Dollars, 2723 49–100.

Six months after date pay to the order of Mr. D. C. Wilson, Twenty-seven hundred and twenty-three 49–100 dollars for value received.

Your ob't serv'ts,

WILSON & HERR.

To Mr. R. K. WEST.
Tallahassee, Florida.

(Endorsed.)          R. K. WEST.

The following is a condensed statement of the accounts filed by Wilson and Herr with their answer:

R. K. West,      To Wilson & Herr.

1840.

| Sept. 16 | To Sundries,...........................$2723.49 |
| | By amt. df't fav. D. C. Wilson, dated |
| | 16 Sept., 1840,.................... 2723.49 |

1841.

| March 19. | To acceptance due this day unpaid, $2723.49 |
| June 25. | To Sundries,...................... 2336.26 |

                                        $5059.75

Wilson & Herr *vs.* Hayward.—Statement of Case.

1842.                          CR.
June 24.      By nett p'ds  cotton  per  Kennebeck
                  to Boston,....................  $243.47

                                                  —————
                                                  $4816.28

To acceptance due 16 March, 1841, $2723.49.
  "          "        "  25 Dec.,    1841,  2326.26·

                                          —————
                                          $5059.75.
Less p'ds cotton per Kennebeck,       243.47.

                                          —————
                                          $4816.28.

                              —————
  R. K. West.           To  Wilson & Herr.
1839.
Nov. 13.      To Sundries,....·.................$1276.86
1840.
April 10.     To Sundries,....................  683.83
Aug. 27.      5p. c.  Exchange  on amount of our
                  bill  of  13 November, 1839, paid
                  at Florida,...................  67.20

                                                  —————
                                                  $2027.89
1840.                         CR.
Aug. 27.
    By amt. p'd to D. C. Wilson & Co.,
       and  deposited by them in Union
       Bank of Fla., as per certificate,   $1366.46
1841.
Jan'y 30.
    By Union  Bank Post Notes,..... ·     661.43

                                          —————
                              $2027.89
              23

The petition in the suit instituted by Wilson and Herr, on the common law side of the Superior Court of Leon County to foreclose the mortgage aforesaid, appears in evidence in this case, on which is the following endorsement :

"Due and legal notice of the within, acknowledged by me this 22 August, 1843, all exceptions being waived as to the time required by the statute."

DAVID C. WILSON,

Adm'r of J. H. Lunn, Dec'd,

A decree was entered in said petition suit, at the ensuing fall term of Leon Superior Court, for a forclosure and sale, no person appearing to object thereto.

The following draft was filed as evidence in *this cause by D. C. Wilson*, together with the notes mentioned in the endorsement thereon :

.          Tallahassee, January 6, 1842,

Sir:—Please pay to the order A. K. Allison, Esq., one thousand dollars and place the same to the acc't of your ob't s'rt,                    EWD. M. WEST.

To D. C. Wilson, Tallahassee.      [endorsed.]

Pay to the order of Mr. R. K· West—A. K. Allison.

Rec'd and paid this draft by way of discount and settlement with R. K. West, taking up four notes, viz :

One to D. C. and J. C. Wilson, and

| | |
|---|---:|
| Interest, . . . . . . . . . . . . . . . . . . . . . . | $120.51 |
| One to D. C. Wilson & Co.; . . . . . . | 380.22 |
| "      " D. C. Wilson, . . . . . . . . . . . . | 212.82 |
| "    "   "   "     " . . . . . . . . . . . . | 160.32 |
| | $873.87 |

The balance credited on account of
  R. K. West,.................    126.13
                            $1000.00

The following receipts are also in the record as evidence in this case,

                    Tallahassee, June 10, 1840.

Mr. L. A. THOMPSON:

  Please pay to Messrs. Wilson & Co., the proceeds of my claims against Thos. M. Bush, in your hands for collection, and oblige yours, &c.,        R. K. WEST.
          [Endorsed.]

Rec'd from Thompson and Hagner the sum of nine hundred and fifty-two 72–100 dollars on account of proceeds of Bush's note, specified within.      DAVID. C. WILSON.
  Aug. 7, 1840.

Rec'd from Thompson and Hagner, the sum of seven hundred dollars, being balance of funds specified in within order.              DAVID C. WILSON.
  August 10, 1840.

Rec'd Tallahassee, Oct. 23d, 1841, of Mr. R. K. West, one thousand dollars, viz: nine hundred and three dollars, Life In. and Trust Co. money, and ninety-seven dollars Union; this is to be credited on a draft of twenty-seven hundred dollars and upwards, belonging to Messrs. Wilson and Herr of Balt. Should there be any difficulty in getting off or making use of the Life In. and Trust Co. money, Mr. West is then to take it back, or pay in its place Union money or its equivalant.       DAVID C. WILSON.

  John Daffin, a witness for complainant, testified that in the spring of 1842, thinks it was in March of that year, be-

ing then engaged in business with R. K. West, he at the request of West, handed him one thousand dollars to be paid to D. C. Wilson, an account of a bill of goods which D. C. Wilson had purchased at the North for West. This sum was for Wilson and Herr, and was to be paid to D. C. Wilson as their agent. West returned shortly after receiving the money, and stated that he had paid it to Wilson. Saw no receipt for it, but is of impression that Wilson told him afterwards, that West had paid him one thousand dollars. The money handed by witness to West, was to be applied to the payment of the account of Wilson and Herr, dated June 25, 1841.

John Wilson, an other witness examined on behalf of complainat, testified that the assignment of the mortgage to Hayward, was not executed in his presence, but was acknowledged by West, who requested him to witness said acknowledgment, which he did by signing his name at the bottom of said assignment. Does not recollect the date, but his impression was that it was sometime in the year 1841.

Robert K. West, another witness for complainant, testified that the assignment of the mortgage to Hayward, was executed by witness, who was mortgagee, named in said mortgage, and that said assignment was executed on the day it bears date, viz, sixth of March, 1841, and at the same time he transferred to complainant one of the notes secured therein. He further testified, that in January, 1842, E. M. West sold some cotton to Wilson, and drew a draft on him, Wilson, for one thousand dollars, in favor of A. K. Allison, who endorsed it to witness. This draft witness declares was used or given by him to Wilson, to pay the

Lunn notes, and was not used in a settlement with D. C. Wilson, of his own private claims against witness. He further states, that on the same day a few minutes after the cotton transaction, he called on D. C. Wilson, and demanded the notes already referred to. Wilson refused to give them up, saying that there was a balance of over three hundred dollars yet due, and when that was paid, he would give up the notes. He further testifies that he did not at any time exhibit the original mortgage to Wilson, it was at the time of the assignment of the Lunn notes to him in the possession of Richard Hayward, and had been since the previous March.

In answer to the cross interrogatories, West declares that the assignment to Hayward, was made because Hayward was security for him on a note to Patterson and Hughes, for $5250.00, and he wished to save Hayward harmless.— He further states at the time he made the assignment to Hayward, he had but one note, Wilson had such of the others as were unpaid, hence the reason of his assigning that particular note to Hayward. At the time of the transfer to Hayward, he says he had no other notes of Lunn, they had been transferred to Wilson. He further declares in answer to the thirteenth cross interrogatory, that he paid the debt evidenced by the acceptance of the draft dated 16 September, 1840, to D. C. Wilson. He states that he cannot produce receipts for the different payments made thereon by him, as his store was broken open in 1849, and his pocket-book containing such receipts was stolen thereform. On being asked whether the account filed by Wilson and Herr, commencing Nov. 13, 1839, did not exhibit correctly the proper charges and credits, and whether the

payments credited were not the only payments made by him, he states that he does not know whether the charges are correct or not. The credits he knows are not correct. The payments therein credited were not the only payments made by him on account of his indebtedness to Wilson & Herr. His receipts for other payments were lost with his pocket book, which was stolen as before declared.

E. M. West another witness examined for complainant, says, that he has seen receipts of David C. Wilson, to and in possession of R. K. West, within twelve months anterior to the taking of his deposition—has no recollection of their amount—they were receipts for so much money without specifying on what account. Does not know where they are. That in 1842 he drew an order on D. C. Wilson in favor of A. K. Allison for $1000 with the understanding that Allison was to transfer said order back to said Wilson for and on account of R. K. West. Knows of no payments made by R. K. West or any one else on the draft accepted by R. K. West, either to D. C. Wilson or to Wilson & Herr. The draft or order drawn by him on Wilson was to be applied to the general account of R. K. West, with said Wilson, or such was his impression, as he knew of no particular bills or accounts between them. So far as he was concerned, R. K. West was at liberty to apply the said order as he saw fit.

David C. Wilson was examined as a witness on behalf of Wilson & Herr, who testified that he acted as agent for Wilson & Herr in their business transactions with R. K. West. He further states that the accounts filed by Wilson & Herr are correct, and that the drafts therein mentioned

and also filed by them of date 16th September, 1840, and 25th June, 1841, were never paid or satisfied.   He further testified that R. K. West, was indebted to him previous to March, 1841, for which on that day  he  gave his several notes, promising to pay the same out of the  proceeds of his cotton  crop then  growing,  if he, witness,  would continue to furnish him, West, which  he did, to the  amount of $157.34–100.   In the fall of 1841, R. K. West, delivered at the Railroad  Depot,  39 bales of cotton in the  name of his son,  and had it  stored  in the  name of witness.   E. M. West called  on  witness  and  demanded an order for the cotton,  which was refused, until the notes of West to him, Wilson,  individually  and  the  account  for  supplies were paid.  The  said  E.  M.  West declared the said cotton was not  subject  to  the  debts  of R.  K.  West.   Witness afterwards agreed to purchase the cotton, retaining one thousand dollars  of  the  purchase  money  to be applied  to  the said notes  and  account of R. K. West  to  him] individually.— This  was  done  by  the  draft in favor of Allison, endorsed to  R.  K.  West,  and  by the latter turned over  to  witness, and  applied  as  stated.  He states that the notes of West to  him individually,  were  subject  to  the  order of West, but he never called for them.   He further declared that the notes  of  Lunn,  were  taken  to  secure the draft  dated 16 September,  1840,  which  draft  never  was  paid by R. K. West, or any other person.   He received  in the latter part of 1841, the exact time not  recollected,  from R. K.  West or John Daffin, one thousand dollars on account of  the two drafts of Wilson and Herr, and from the positive declaration of  John  Daffin,  he is satisfied  this payment was made on account  of  the  draft of 25  June, 1841.   Has no recollection of any other payments.

The complainant at the proper time objected to the competency of David C. Wilson as a witness for Wilson and Herr, because he was a party to the record, and because of his interest to defeat the complainant in the remedy sought by this proceeding.

The Court below, decreed the sale of the premises under the decree of foreclosure in favor of Wilson and Herr, to be set aside, vacated the said decree, and directed the parties to be paid according to their respective interests, out of the proceeds of the mortgage premises when sold, in *pro rata* shares; and to ascertain the amount of their respective interests, a reference was made to a master.

From this decree Wilson and Herr appealed.

*D. P. Hogue* for Appellant.

1. The appellant had a right to forclose the mortgage as they did, either at law or in Equity. The statute gives the right when the debt is due, both to the mortgagee and assignee.

The appellants were assignees of the three notes received by the mortgagee, which fell due before the note held by the appellee; and it is unnecessary to cite authority to maintain the position, that the assignment of the notes carries with it the security of the mortgage.

2. Where there are several notes secured by the same mortgage, the right of the assignee of one note to forclose when the note falls due, necessarily results from this doctrine: He is not bound to wait until all the notes fall due, but may proceed when his mortgage debt is due, and he is entitled to the whole mortgage subject, if it takes it all to pay his demand. (1 Bibb 150, 1 Randolph 466, 10 Smeede & Mar., 631, 6 Howard, 320.)

3. In Alabama it has been held that the first assignee of one of several notes is entitled to priority of satisfaction out of the mortgage property.    (See 4 Ala., 452 ; 9 Ala., 648.)

4. In this case the appellants were not only the assignees of the notes which first fell due, but they were, as the evidence shows, actually prior assignees; for it is not proved on the part of the appellee, that he held the mortgage deed by assignment anterior to the date of the transfer of the notes held by appellant.

5. The assignment of the mortgage without the debt is considered to be without meaning or use.    In this case, the assignment of the mortgage is clearly defective, not being under seal.    (5 Halst., 156.)

6. The appellee, if entitled to any thing, is only entitled to a *pro rata* share of the proceeds of the sale under the first foreclosure, and this he can only have upon a bill filed against the purchasers, who are the appellants—Wilson and Herr.    He cannot have a decree of foreclosure against D. C. Wilson, the administrator of Lunn.    (2 Florida, 27.)

7. As to the substantial compliance of the administrator with the requirements of the statute, I think there can be no doubt; the notice given fully meeting the views of this Court in the case of Laverty vs. Filyaw.    (2 Fla.)— The claim of the appellee was not presented within the time prescribed by law.    (Thom. Dig., 206)

8. The appellee has slept upon his rights, if he had any, and is not now entitled to the favor of a Court of Equity.

9. The decree of the Court below is erroneous, because

24

it makes no allowance for improvements of great value upon the premises.

10. The first decree of foreclosure, and the sale under it, having been made by a Court of competent jurisdiction, upon a subject properly before it, ought not to be vacated and set aside, unless it was obtained by fraud or collusion, and of this the record furnishes no proof.

*M. D. Papy*, for Appellee.

The judgement of foreclosure in favor of Wilson and Herr, is a nullity as to Hayward and is not binding on him, because,

1. He was not made a party to the proceedings, although he was not only interested as the holder of one of the notes, secured by the mortgage, but was the legal holder of the mortgage itself by assignment, and

2. Because the said judgement of foreclosure was not warranted or authorized by the statute under which the proceedings were had.

"The party claiming a judgement of foreclosure at law, shall be the owner of all the notes, the mortgage was given to secure, and without it is not entitled to judgement." (Wilson, Adm'r of Lunn vs. Hayward, 2 Fla. R., 27.)

There can be no foreclosure until the parties entitled to the whole of the mortgaged premises are before the Court. (1 Eng. Chy. R., 215, 217, 1 Bro. Chy., 368.)

Wilson and Herr as assignees of some of the notes secured by the mortgage, had no such interest in the mortgage itself as authorized a foreclosure at law, for the assignment of the notes did not carry the mortgage *at law*. In *Equity* the assignment of the debt carries with it the mortgage through the medium and circuity of a trust by implica-

tion.    (1 Story's Eq., 353, Roberts on Frauds, 272, 4 Pick., 131.)

Such was the view of the Legislature, for the statute of this State in reference to mortgages authorises, the assignee of a mortgage to take the steps and pursue the same remedies as the original mortgagee, and it declares that all petitions for the foreclosure of mortgages under and in pursuance of its provisions, *together with the original mortgage,* shall be filed in the clerks office at least four months, when the foreclosure is to be of real property, and two months if of personal, before the term of Court at which judgement of foreclosure can be demanded.— (Thomp. Dig., 376, 377.)

To entitle a petitioner to pursue the remedy provided by this statute, he must be the legal holder of the mortgage, for if he is not such *legal* holder, he not only cannot according to general principles, pursue any *legal* remedy, but he cannot file the original mortgage as required by the statute. As assignees, of the notes simply, the remedy of Wilson and Herr to foreclose the mortgage was in Equity, for it is only in that Court that the proper parties could be made, and that Court only has the power to declare through the medium of a trust, that the assignees of a note secured by a mortgage, is entitled to the benefit of the security. If it be true that Wilson and Herr had no interest in the mortgage at law, it having been assigned to Hayward, how could they have obtained a foreclosure at law, except by collusion with or the default of D. C. Wilson, admi'r of Lunn. And can it be held to be law, that Hayward who was not made a party to the proceedings, who held the original mortgage by assignment,

is to be concluded by the judgement rendered in favor of Wilson and Herr.

2. Hayward having received the assignment of the mortgage, and one of the notes prior to the time, when the other notes were assigned to Wilson and Herr, as we contend, is entitled to priority. (4 Alabama, 452, 9 Ala., 645.) The written evidence of the assignment is better than any of the declarations of the witnesses.

3. At all events Hayward is entitled to a sale of the mortgage premises, and to a *pro rata* share of the proceeds, and if not such *pro rata* share, then to the surplus that should remain after paying Wilson and Herr what is due on the draft, (if any thing remains due,) to secure which the Lunn notes were assigded.

4. The evidence of D. C. Wilson should be rejected, because he is a party to the suit, and because he is interested to defeat the complainant.

BALTZELL, C. J., delivered the opinion of the Court.

This case was before us at the January term, 1848, on an application of the defendant, Hayward, to foreclose under the common law proceeding of this State, a mortgage executed by James Lunn. The proceeding was against the administrator of Lunn, who resisted the application on the ground that other parties holding notes of prior date, had already foreclosed and had sale of the mortgaged property.

The Court considering that if the party had rights, they could be more appropriately asserted in equity than in a Court of law, and especially that the purchasers under the sale already had, should be made parties so that a second sale should be avoided if possible, and the conflicting rights

and interests of the different parties properly adjusted, sent the case back with that view. It is now before us, with new parties and the facts presented are as follows:

Robert K. West was the owner of a mortgage on part of lot 167, in Tallahassee, executed to him by James Lunn, on the 4th day of June, 1840, to secure payment of five promissory notes, for one thousand dollars each, payable the 4th days of June, 1841–42–43–44 and '45.

The first note seems to have been paid, the second, third and fourth, falling due in 1842–43 and '44, were assigned and transferred by West on the first day of June, 1841, to Wilson and Herr. On the 22d of August, 1843, two of these notes having become due, these parties filed their petition of foreclosure, and in January, 1844, procured a decree or judgement of the Superior Court for Leon County, under which the property was sold to pay said debt by the marshal.

The complainant, Hayward, claims to be the assignee of the last note, and of the mortgage by transfer bearing date the 6th of March, 1841. His bill alleges that the decree of Wilson and Herr, was obtained by collusion and that he is entitled to prior payment by virtue of his previous assignment, as well of the note as of the mortgage.

The enquiry becomes an important one in the very outset, whether Hayward in fact has the prior assignment.— In his bill he proposes to the defendants the question directly and expressly, whether West did not on or about the 6th of March, 1841, indorse and deliver the said note of Lunn, for one thousand dollars, and whether he did not at the same time assign the mortgage. In reply to this, D. C. Wilson says: " when the notes received by him for

Wilson and Herr, were offered, he is of opinion that said West produced and offered five notes of the same amount executed by the same person, all of which, as this defendant supposes, were secured by the mortgage which said West held and produced at the same time. That if the note which complainant holds is one of the five notes mentioned in said mortgage, it could not have been assigned and transferred to him on the 6th of March, 1841, if he is correct in the impression strongly fixed on his mind, that he saw said notes in the actual possession of said West, at a date posterior to the said 6th of March. He therefore denies and calls for proof of the time of the alleged transfer to complainant.

Robert K. West is questioned for complainant on this point, and says in his direct examination, the assignment of the note and mortgage were made at the day they bear date, 6th of March, 1841.

In his cross examination however, being asked how many notes he had in possession at the time of this assignment to Hayward, he says he had but one, Wilson had the other two, hence the reason of my assigning that particular one to Hayward. Again, being asked at the time of the transfer to Hayward how many of said notes of Lunn he had assigned, he replies, "that at the time of the transfer to Hayward he had assigned none but the two and those to D. C. Wilson, making in all three notes." Again asked if he had other notes of Lunn in his possession falling due anterior to this transferred to Hayward, why he did not transfer them also, his reply is, " I had no other notes of Lunn at the time, they had been transferred to D. C. Wilson." His account of the transfer to Hayward is as fol-

lows: " I made this assignment because Hayward was security for me on a note to Patterson and Hughes for $5,250, and I wished to save him harmless. When I found the crush was coming upon me I went to him and told him of it and said to him here take this, satisfy yourself and gave him the mortgage and the note of Lunn attached to it."— Independent of the repeated declarations by him that he had assigned the prior notes to Wilson and Herr, this last statement strikes us as corroborating it with great force. Why if he was so anxious to secure Hayward in so large a sum and had four notes secured by mortgage, does he give only one for $1000 and that, the last due of five and payable at the distant period of four years ?

We are of opinion then that Hayward took his note and the assignment of the mortgage after the other notes were assigned to Wilson and Herr. Having ascertained that the notes obtained by the latter fell due first and were assigned and transferred first, the question arises as to the law of the case. As a general rule the assignment of a note secured by mortgage is in equity an assignment of the mortgage unless there is some special provision by the parties to the contrary. Where several notes have been assigned as in the present case lies the difficulty.

The first case on the subject was decided by the Court of Appeals of Virginia, and is the leading case. A deed of trust was executed by William and Francis Sutten to trustees to secure payment of three notes to Barrett. The first note was paid, the second transferred to Ragland without any assignment to him of the deed of trust, the third endorsed to the Gwathmeys who took an assignment of the deed of trust for their security. The Trustees having ad-

vertised the land for sale to pay Ragland's claim, the Gwathmeys filed a bill against Ragland and the Trustees to enjoin them from selling the property. An injunction was granted which was dissolved and the case taken to the Court of Appeals. The Court say that the deed of Trust being intended by the parties to it as additional security for the payment of the notes to Barrett or his assigns in the order in which they fell due, it followed the notes into the hands of the several holders thereof and that it was not competent to Barrett by an assignment of the deed to the Appellants, without the assent of the Appellee, to whom the second notes had been assigned to deprive him of his priority of right to demand a sale of the property, if necessary to the payment of the note assigned in the order of payment expressly directed by the deed. The deed being assigned to the Appellants, gave them full notice of the order in which the notes were to be paid to Barrett or his assigns, and at least, put them on the enquiry whether the first and second notes had been paid at the time they took the assignment of the third note and of the deed of trust. By not making that enquiry, if they relied on the trust fund as security for the payment of the note assigned to them, they may have lost their money ; however that may be as against the Appellee, the Court is of opinion that he has no claim to be preferred. Gwathmeys vs. Ragland, 1 Rand. 466.

The Supreme Court of Indiana say; "the meaning and construction given to a mortgage payable at different times by several promissory notes, must depend upon the law of the remedy upon such notes or mortgage for these contracts as well as others are made under and with an

eye to the laws governing their enforcement. In this State a mortgage may be foreclosed, when there are instalments, on default of payment of the first instalment. The holder of the first note may, if he chose, when that becomes due, enforce the full payment of it out of the mortgaged premises, and the holder of the second note may in like manner obtain priority over the third, and so on. State Bank vs. Tweeds, 8 Black, 447. This is also the rule in New Hampshire, 10 N. H.

In Alabama a different rule prevails; there the prior assignment seems to give preference of payment in case of dificiency of the mortgage fund. (Cullum vs. Erwin, 4 Alabama, 458.)

In that case the Court admits that in 5 Porter and also 9 Porter, 527, McVoy vs. Bloodgood, the same Court had decided that the assignee of the notes which first fell due, would have the prior right. They say that the same decision with the one established by them was made in Gwathmey vs. Ragland, under precisely a similar state of facts.

They also refer to Van Rensaleer vs. Hopkins, decided by the Supreme Court of New York. In reference to this case as well as the one just alluded to, we think that intelligent Court was mistaken. Van Deusen, says the, Court had two mortgages, the first he assigned to Van Rensaleer for $1180; though made to him it was intended for the use of Van Rensaleer, and to secure him the unpaid balance of the land which he had sold Van Deusen. Van Deusen therefore in effect received and held the mortgage for $1180, in trust for Van Rensaleer, and his intention was that this mortgage should become the first incumbrance by a prior registry &c.

25

The assignment to Van Rensaleer was thus not merely an arbitrary preference by Van Deusen of the original mortgage to the mortgage retained, but it was a just discharge of duty, a fulfillment of the confidence which Van Rensaleer had reposed in Van Deusen, and a substantial compliance with the antecedent rights of the parties.   1 Hopkins.

It is very true that the prior assignment is alluded to, but it will be perceived that the case is principally decided upon the peculiar equities of the case as existing between the parties.   Equally unfortunate is the reference of the Court to and reliance upon the case of Gwathmey vs. Ragland.   We have seen already that this case is not authority for payment to the party having the first assignment or transfer of the note, in preference to the one whose note fell due first.

In Mississippi a different rule still is held, as their Courts devide the proceeds of the sale of the mortgage property amongst all the notes agreeing with none of the authorities to which we have alluded.   Here again the Virginia case is regarded as not being in conflict with the rule established by them.   The leading case is that in 6 Howard, 320, and with due respect to the very high intelligence and ability of that tribunal, the equity of the case and the rights of the parties depend on the peculiar facts and circumstances of the case, rather than the maintainance of any rule or principle of law obtained from the authorities cited.

Whilst we are free to declare our own opinion in favor of the Virginia rule as best agreeing with analogy, as most certain and definite, leaving less to uncertainty and

confusion, whilst we admit that there are equities to change its application, as in the New York and Mississippi cases, and in the case of a mortgagee claiming after the assignment of part of the mortgage debt, yet it is unnecessary in the present case to assert the superiorty either of the rule of the Va. or Ala. Courts. It is sufficient that the adoption of either is fatal to the case. The complainants Wilson and Herr have the first assignment of the notes; their notes were first due by the terms of the mortgage. They obtained a decree of foreclosure in January, 1844, and the property was sold on the fourth of March, 1844, upwards of a year previous to the time Hayward's note became due. If Hayward has an equity, it must be because the property is worth more than the claim of Wilson and Herr, or there has been irregularity or fraud in the sale to invalidate it.

There is no allegation in the bill as to the value of the property, no assertion that it is more than sufficient to pay the three first notes. The Complainants' bill is predicated on his prior right and equity. The amount bid at the sale is no where stated, tho' Wilson says in his deposition, " the property brought but a small proportion of the draft ($2,-729). There is then no propriety in ordering another sale; this would be a vain and fruitless thing.

Is there an irregularity in not making Hayward a party to the judgment of foreclosure. As a general rule all incumbrancers should be parties. Prior incumbrancer's rights are paramount, and they would seem to be necessary if not indispensable parties 7 Paige 444, 2nd Alaba. 415, 2 Ed. Chy. 127.

A subsequent incumbrancer is not an indispensable par-

ty Cullum vs. Batie, 2nd. Ala. 415, Walker vs. Bank Mob. 6 Ala. 452.

A second incumbrancer is only affected and can only complain when there is a surplus after paying prior liens. His right to the surplus cannot with propriety arise until it shall be ascertained that there is a surplus, and this cannot be shewn before the mortgaged premises have been sold and the debt of the prior incumbrancer with all costs fully discharged.   2 Alabama 422.

The English practice is to allow the subsequent mortgagee to redeem by paying up the prior mortgage.    Coote 522.

It remains to notice another allegation of the bill, that the judgment of Wilson and Herr was obtained by fraud ; the defendants employed Counsel to institute suit against himself—waived the filing of the petition four months before the first day of the term ; waived the filing of the mortgage and substitued a copy thereof, and wrongfully allowed judgment to be entered up immediately.   The answer of the parties denies collusion, and we find not a particle of proof to support it.   The facts stated even if true, by no means constitute fraud.   The defendant alleges that he had no defence to the suit and desired to avoid delay and expense; what objection then was there to a direct confession of judgment without previous preliminary proceedings ?

In the case of Finley vs. Bank U. S., the bill was filed at the November term, stating the consent of the mortgagor to an immediate sale of the mortgaged property although the *day of payment had not arrived,* and on the same day an answer was filed consenting to a decree for the sale.   A decree was immediately entered by consent of parties di-

recting the Marshal to sell the property, and yet no one complained of this as irregularity, much less fraudulent, although the decree was assailed by a prior mortgagee.    11 Wh. 304.

Independent of this, it is not allowable to attack a judgment collaterally by asserting irregularities that might form the subject of reversal in an appellate Court. A judgment concludes the subject on which it acts, and those things are regarded as proved and done which ought to have been proved to entitle the party to judgment.    Grignon's lessee *vs.* Alston, &c., 2 Howd. S. C. R.  343, 3  Peters  204, 5, 10 Peters 473.

On the whole case we see no ground for disturbing the sale or for ordering another sale.   The decree of the Circuit Court will therefore be reversed and set aside, and the case remanded with instructions to dismiss the bill with costs.

The following petition for a re-hearing was afterwards filed:

### PETITION FOR REHEARING.

Richard Hayward, Appellee in this case, asks the Court for a re-hearing of this cause, on the following grounds :

I. The Appellee's Counsel in this case supposed the case as was ordered by the decree of the Court below, would be referred to a master, to ascertain the amounts due respectively to Hayward and to Wilson and Herr, when it could be shewn that nothing was really due to the latter and therefore, he did not think it proper to discuss it here. But as the Court orders the bill to be dismissed, Appellee respectfully asks the Court to open the judgment in this case,

that he may now be permitted to show that the debt to Wilson and Herr was fully paid before they obtained their foreclosure at law.

II. The debt due for which West assigned the notes to Wilson as collateral security, has been paid.

It appears from the answers of D. C. Wilson, and of Wilson and Herr, that on the 16th day of September, 1840, West only owed Wilson and Herr $2723,49, for which amount, they drew a draft on West in favor of D. C. Wilson, and which draft was accepted by West. No other evidence of indebtedness exists in the record. Wilson states in his answer that " *on the first day of June,* 1841, *West being indebted in the sum of* $2723,49, *for which amount, West had* accepted their draft, and being desirous to secure it and upon such security being given to obtain *further credit,*" *&c.* Wilson and Herr say that the sum of $2723,49, the amount of the draft, was the sum due them for goods, &c., *furnished before that time.* From all this, it is clear, that no other sum was due from West than the amount of said draft.— There is no pretence that there was any other sum due to which any subsequent payment by West could be applied. Certainly there is no proof of any other indebtedness.— Neither Wilson nor Wilson and Herr pretend or allege that there was any other indebtedness. See the answers of D. C. Wilson and of Wilson and Herr. To secure then the only indebtedness from West to Wilson and Herr, on the 1st June, 1841, West assigned the notes mentioned in the record as collateral security, which notes were to be returned when the draft for which they were a security should be paid. We repeat there is neither proof nor pretence that there was any other indebtedness from West on the

first day of June, 1841, than the draft for $2723,49.

Now if that sum was all he owed them at that time, the next question is what has he paid them since the draft was given which ought to be credited on it.

The first payment of which we have any evidence is that of $661,43, made on the 30th January, 1841, as appears from their accounts filed with their answers. This credit, it is true, is placed on an account for $2027,84, but let it be recollected that this account is all for goods furnished before the date of the draft for $2723,49, and which latter amount, by the answers of Wilson and Herr and D. C. Wilson, was all that was due Wilson and Herr at the date of the draft, viz: 16th *September*, 1840. This account, it will be seen, was for 1839, &c., and consequently does not and did not constitute any evidence of debt, especially as the defendants themselves do not claim any other indebtedness up to 16th September, 1840, than the amount of the draft. It is asked why was this amount of $661,43 not credited on the draft?

Can it be said that it was appropriated by Wilson and Herr to the payment of an indebtedness other and anterior to the draft, for goods sold before the date of the draft. We answer that there is no evidence or even pretence of any such indebtedness, but on the contrary, Wilson and Herr in their answer say *that the draft was the amount in which West stood indebted for goods furnished previous to its date.* No witness swears to any debt, nor does West acknowledge any but the draft. The simple presentation of an account subsequently, without any evidence, and against their own statements, does not authorize them to apply a payment made subsequently to the

date of the draft, which they acknoweldge was all that was due to them.

The account is evidence of the payment to them, but no evidence of indebtedness. Even if the account was correct, it should have been proved, but we cannot presume it to be true, when the parties themselves say the draft was all that was due. But if it is claimed that this account is just and correct, let us enquire if it was not itself also paid. By it, it appears that in August, 1840, West paid D. C Wilson $1366.46, and by the receipts in the record, it is seen that Thompson and Hagner paid Wilson, 7 August, 1840, $952, and 10 August 1840, $700 by order of West. These last two sums together, make $1652, yet we find no credit for them anywhere. This will go to strengthen the declaration of Wilson and Herr themselves, that on 16th September, 1840, the amount of the draft was all that was due to them. Again, the item in said account, dated 27 August, of "5 *p. c. exchange on amount of our bill of* 13 *November*, 1839." (The very date of this account,) "*paid at Florida*," shows that this bill or account was paid when the draft of 16 September, 1840, was accepted, and furnishes still stronger proof, (although there is no proof of such indebtedness,) that Wilson and Herr were right when they say in their answer that the amount of the draft was all that was due them.

But why multiply instances when the parties themselves make no prentence of such a claim. There being no such claim, then the payment of $661,43, as of 30th January, 1841, should go as a credit on the draft. We cannot go behind the draft of 16th September, 1840, to enquire into the state of the accounts before that time.

Wilson & Herr *vs.* Hayward.—Petition for Rehearing.

The defendants say themselves that the draft was for $2723,49, " *that being the amount in which he stood indebted for goods furnished previous to that time.*" But if they had not said so, the presumption of law would be the same, for the law will not presume that a creditor will do so foolish a thing as to take the acceptance or promisory note of his debtor for a subsequent debt, and leave a prior debt unprovided for. The law presumes a prior debt, in such a case, to have been paid.

We will take the 16 Sept., 1840, as our starting point. At that date West owed D. C. Wilson or Wilson and Herr a sum which with interest on it for six months, (the time when the draft became due;) made it amount to $2723.49 for which West accepted a draft. One month and half before the maturity of the draft, to wit: 30 January, 1841, West made a payment of $661.43–100, he is entitled to interest on this payment until the maturity of the draft, to wit: $2.29, which with the principal makes $663.63.— Deduct this from the draft and it leaves on the draft $2059.86, due 16 March, 1841.

The next payment, (see Wilson's receipt in the record,) was made on 23 October, 1841, amounting to $1000.00.— Wilson in his answer to the fourth interrogatory, states that he is satisfied this payment was made, for and on account of a draft for $2336.26, and yet his receipt shows the contrary.

On the production of this receipt, Wilson's counsel abandoned such application, and yielded the point that the payment was made on the draft for $2723.49- This shows how much Wilson's recollections are to be relied on. Add now the interest ($97) from 16 March, '41, to 23 Octo-

26

ber, '41, to $2059.86, the balance due on the draft on 16 March, and we have $2156.86, and then credit the payment of $1000.00, there remains $1156.86 due on the draft on 23 October, 1841.

The next credit we contend for, is that of $1000.00 made January 6th, 1842, It is true of this payment as of the other that D. C. Wilson denies that it was made as a payment on this draft. Being mistaken as to the other we will show that he is equally so as to this. But before discussing his testimony in regard to this payment, I premise that his testimony should be entirely rejected.

1. Because he is a party to the record, &c.

2. Because of his interest in the case.

The objection to Wilson's competency was made before he was examined, as the record will show. A party to the record is sometimes allowed to be examined as a witness, but only where an order of Court for that purpose is first had and obtained.

Again, he is clearly interested. He claims a right here by his own testimony, of appropriating to himself a payment which West, who made it, swears was appropriated by him, at the time, to the draft, or to Wilson and Herr.

If the Court shall decide upon his testimony that he properly retained for himself the payment, he makes a thousand dollars. If the Court shall decide on the testimony of West, that the payment was on the draft to Wilson and Herr then he loses a thousand dollars. I can imagine no clearer case of interest. But let us continue to pursue the facts.

We have in evidence a check drawn by E. M. West on D. C. Wilson for the amount of this last payment in favor

of A. K. Allison who endorses on it, "pay to the order of R. K. West." Then we have the positive assertion of R. K. West that his order was that it should be applied in payment of the draft to secure which the Lunn notes were assigned. West in answer to the nineteenth cross interrogatory, says : " It was not used by me in a settlement with D. C. Wilson, but was given to pay the Lunn notes." Again, in answer to the 4th question he says : " on the same day a few minutes after the cotton transaction, I called on D. C. Wilson and demanded the notes already referred to. Wilson refused to give them up, saying there was a balance of over three hundred dollars yet due." This makes out a plain case. The check is endorsed pay to the order of R. K. West, and West swears that his order was that it should be paid on the Lunn notes. A debtor has the right to apply a payment to whatsoever debt he pleases. This principle is always recognized in every Court. David C. Wilson, without denying this, seeks to justify the appropriation to himself by speaking of some transaction between himself and Edward M. West and A. K. Allison. But it is submitted that what occurred between himself and Allison and E. M. West has nothing to do with the question. Here then is the undenied oath of R. K. West. West never consented that the check to Allison should go to an alleged indebtedness by him to D. C. Wilson nor does Wilson pretend that he ever did. A further evidence of the fact that he did not so consent is the pregnant fact that he did not at that time or at any time subsequent, take up the notes which Wilson alleges he held against him and *produced in evidence by Wilson himself with his own endorsement on them.* West not all only had the right to *order* the Allison check

to be applied to the draft, secured by the Lunn notes, but did absolutely so order. It is presumed that his testimony is entitled *to more weight on this point* than that of any other person, particularly Wilson, who, it is shown, is deeply interested. West's testimony, it is believed, is on this point, uncontradicted.

Add then to the sum due $1156,86, interest to 6th January, 1842 $19,28, and we have $1176,14, from which deduct the payment of a thousand dollars and it leaves due only $176,14, 6th January, 1842.

The next payment of which we have any evidence is that of June 24, 1842, as shown by the account in the record, viz : " by nett proceeds of cotton per Kennebeck to Boston his proportion" $243,47. I know no reason why this amount should not be credited on the draft of 16 September, 1840, at least enough of it to pay the balance due on said draft. That balance as we have seen was $176,14 on 6th January, 1842. Add interest $6,36 and it makes $182,50 due on 24th June, 1842, on which day $243,47 were paid, which paid the whole balance of principal and interest due on said draft of 16 September, 1840, and left $60,90 overplus.

It is true there is no direct testimony in the record of the specific application of this last payment, to the balance due on the draft of $2723.49. The only application as shown by the record, is to the joint amount of the two drafts, viz : the one for $2723.49, and the one for $2336.26.

According to this application, one half of the payment of $243.47 belongs to the balance due on the draft viz : $182.50 which would leave due only $60.

But we maintain that the whole of the $243 or so much

thereof as was sufficient should be applied to extinguish the balance of $182.50, due on the draft of $2723.49, according to the principle admitted by this Court, in the case of Smith and Paramore vs. Randall, 1 Florida, 428, and cases there cited. In the case of Devane vs. Noble, cited by the Court, 1 Merivale, 606, the master of the Rolls says: The debtor has first the right to apply. If he does not then the creditor. If neither apply the payment, the law makes the appropriation; and the rule of law, is to apply to the most burdensome debt,—one that carries interest rather than one that does not. And if the debts are equal, then *to that which has been first contracted.* And if there are other parties interested, *the justice of the* case requires that the application should be made for the benefit of such other parties. So that in whatever light this last payment is viewed, the conclusion must be that it extinguished the whole of the draft for $2723.49, for which the Lunn notes were transferred as collateral security.

It thus seems most incontrovertibly that the claim of Wilson and Herr on the Lunn notes, ceased before they instituted their suit for a foreclosure, and they ought to have returned those notes to West according to the agreement of Wilson in the record.

Hayward had no opportunity in the suit of Wilson and Herr, vs. D. C. Wilson, administrator of Lunn, to show these facts, as he was not made a party. Wilson who conducted the whole affair for both parties, was interested in the whole business, and if Hayward is not permitted to claim that the foreclosure decree is all wrong, in a proceeding in which he makes all persons concerned, parties, then there is no remedy left him, and no means allowed to

show that when the foreclosure was obtained, Wilson and Herr had not a particle of interest in the mortgage; for let it always be remembered, that the Lunn notes were not assigned out and out in payment of Wilson and Herr, but only as collateral security, and by agreement, they were to be returned when the draft of $2723.49 was paid.

We are not left to the deductions I have made from the whole evidence to show that nothing was due on the draft of $2723.49. West in his evidence says, that that draft *was fully paid by him.* Is this statement of West a simple wanton assertion ? The facts in the record distinctly show that his statement is correct. This statement of West goes further, and shows [that he intended the last payment of $243.47, to be applied to pay off the final balance due on that draft. *West says that the draft was paid.* This is his testimony, as positive as any declaration made by him, and the other separate *facts* in this record prove the same thing, notwithstanding the statement of D. C. Wilson, who is so deeply interested in this cause.

Counsel for appellee, begs leave to present another point not presented in the argument, viz: That if he is right in the position that the foreclosure at law, was not warranted by law, even if there was any balance due on the draft, then we say that Wilson and Herr having taken possession of the mortgage property, have been paid more than was due them, and more than the value of the improvements by the receipts of rents and hires.

Let us next enquire whether Wilson and Herr, had really any interest in the Lunn notes. The draft for $2723.49, was in favor of D. C. Wilson individually. The acceptance of said draft by West made it a debt to D. C. Wilson,

and to D. C. Wilson did West assign the Lunn notes as collaterals. This being so, D. C. Wilson, and not Wilson and Herr, could foreclose the mortgage. But D. C. Wilson could not sue himself, as adm'r of Lunn, and he procured a lawyer to bring suit against himself, in favor of Wilson and Herr. Here is the anomaly of a person holding a debt against himself, procuring a suit to be brought in the name of a third person, without making anybody parties, or giving them an opportunity to show that really there was nothing due.

If I have succeeded in showing that the draft for which the Lunn notes were *collateral* security, had been fully paid before the foreclosure suit, then I maintain that Richard Hayward has in this proceeding the right to have the decree of foreclosure aforesaid, set aside and a decree in his favor to foreclose the mortgage. Any other result under such a state of things, would be grossly unjust, and would be a premium to men to act wrongfully.

For these reasons, Counsel for appellee, respectfully prays the Court for a rehearing in this case.

---

The rehearing being granted, and after argument, BALTZELL, C. J., delivered the following opinion of the Court on the matters presented in the petition:

OPINION ON PETITION FOR REHEARING:

The subject of payment of the mortgage notes, held by Wilson and Herr, on which judgement of foreclosure was had, was not presented to us in argument, but considered as abandoned and so treated in the opinion delivered by the Court. The Counsel for complainant, has explained this omission by saying that a reference was had to the

master in the Court below, to ascertain this fact, and under the impression that the case would go back and this subject be thereby ascertained, he did not think proper to discuss it here. Inasmuch as the unexpected turn which the case has taken, cut him off from this resource, and inasmuch as the point of payment, was in his consideration, vital to his client's case, the Court on his application granted a rehearing, which has been had and we now proceed after due deliberation, to give the conclusion to which we have arrived, premising that nothing has been wanting to present the case which the zeal and industry of Counsel could effect.

No doubt if payment was made of these notes, before judgement, the right of complainant to relief is clear and unquestionable. He alleges payment in general terms, without specifying particulars, or items, or sayings when, or how, or by whom payment was made. He calls upon defendants to state whether any and what payments were made by said West, on account of said debt and how much was due thereon at the time of foreclosure, and that a full statement be made and exhibited, showing the amount of said debt and all payments made thereon, and securities realized and its true condition." To this, defendants answer that "no payments were made under said debt, and the whole amount was due at the date of said foreclosure, and they exhibited a full and perfect statement taken from the books of the firm of Wilson and Herr, showing the bill of goods at various times, sold to said West by said firm, and the payments made thereon, to which they refer as a true and accurate exhibit of their business and dealings with said West."

This exhibit presents three different accounts, the first for $2027.89, dated 13th November, 1839. The second for $2723.49, dated the 16th September, 1840, secured by three notes of Lunn of $1000 each. The third for $2336.26, dated June the 25th, 1841, making an aggregate of $7088.14.

To the account of November, 1839, are attached two credits, one of $1366, dated 27 August, 1840, and another of $661.43, of the date of 30 January, 1841,—to the two accounts of 1840 and 1841, is attached a credit of $243.

Complainant claims that the credits of $661, $1366 and $243, should be applied to the second acct of 1840, secured by the mortgage, and that there are other payments also applicable to it, to wit : $1652, paid by Thompson and Hagner ; $1000 paid in bills of the Life Insurance and Union Bank, and $1000 in a draft by E. M. West and A. K. Allison for cotton.

The credits of $1366 and $661, it is said should be applied to the draft of $2723, or in other words be applied to the mortgage notes.

The reliance for this position is upon the alleged admission of defendants in their answer, " that the draft of $2723.49, was the amount in which West stood *indebted* for goods, furnished previous to that time." The inference drawn from this is that West owed at this time, 16 September, 1840, the sum of $2723.49, and nothing more.— We cannot consent to such construction. If the sentence stood alone and by itself unconnected with others, it might possibly admit this construction. In connection, however, with and in express reference to this very subject, the defendants give a copy of an account of previous

27

date, 13th November, 1839, in which there is an indebtedness of $2027.89, closed by these very payments. The accounts and these very credits then constitute as much a part of the answer as the expressions cited, and to construe them as contened for, would be to exclude a material and important part of their statement, and be doing the utmost violence to the clear and manifest intent of defendants, as declared in their answers. R. K. West had no such opinion. He is particularly questioned as to these items and this account, and says, "he does not know whether the charges are correct or not. The credits he knows are not. The payments therein credited, *are not the only payments ever made by me*, on account of my indebtedness to Wilson and Herr."

Here the objection is not to the credits made, but to the want of some which he thinks ought to have been made. It is not a little singular that if this account of 1839, showing indebtedness previous to the draft is excluded, there is no other evidence in the record as to their payment. We are of opinion then that there is no ground for contending that these items should be applied differently to what they have been by defendants.

The next sum claimed, is a payment by Thompson and Hagner to D. C. Wilson, made on the 7th and 10th days of August, 1840. The credit of $1366, bears date of the 20th August, predicated on a part note of the Union Bank, dated 10 of August, 1840, so that the inference seems a fair one, that these relate to the same transaction. There is no other money shown to have been received about that time. Had the whole sum of $1652 been credited, little doubt could remain. We, however, think it the same

transaction, excepting that the entire sum received by Wilson, was not remitted. The sum of $286 not forwarded to Wilson and Herr, nor credited in any other account, will then form a just credit upon the acct. of $2723.49, at that time the oldest account unsettled.

The next claim is a sum of $1000, paid 26 January, 1842, through cotton of E. M. West, and a draft of A. K. Allison. There is no question as to this sum of money being received by D. C. Wilson, the only question is whether it was for his own individual account, or for the account of Wilson and Herr. For anything appearing in the record, the latter seems never to have had anything to do with this transaction, nor to have been informed of it even.— Wilson claims it as an individual transaction of his own, and files a statement of the manner of its adjustment, showing the draft of Allison and the notes and account of his firm with which it was paid. In a transaction of this kind, where a party was indebted to an agent in his individual right, jointly with a debt to another concern, prudence would seem to require that the debtor would specify distinctly the debt to which payment should be made, that he should take a receipt and close the transaction by taking up the note or debt paid. Nothing of the kind takes place here. West does not even say that he directed the application of this payment to the Lunn notes, or to the Wilson and Herr debt. His statement in his deposition is "the notes given as collateral security have been paid, $1000 in cash, and in the draft of Allison for $1000 more." Again he says: "I did pay it, I paid it to Wilson, (the draft of $2723.49,) I gave Wilson an order on L. A. Thompson for $    , and the balance I paid in current money of the country."

Now, if there were nothing else in the case but this statement of West, we should feel bound to disregard it in oppositinn to the denial of the answer. It is true this does not deny this payment in so many words, but makes a denial as large as the allegation of the bill. The bill charges payment of the mortgage notes. The answer denies it.— But there is other evidence. E. M. West examined by complainant, in his deposition says: "in the early part of 1842, I sold to D. C. Wilson cotton to the amount of $1500 I drew an order on D. C. Wilson in favor of A. K. Allison for the sum of $1000, with the understanding that Allison, was to transfer said draft back to said Wilson, for and on account of R. K. West." Questioned as to the application of the payment he says: "The draft was to be applied *to the general account of R. K. West with said Wilson,* or such was my impression."

Now, E. M. West seems to have been the chief and active agent in the transaction, and his evidence as to the application of the draft to a particular subject, is more to be relied upon and greatly preferred to a general allegation of another witness, that the note was paid. We have remarked upon the importance of receipts being taken in a case of this kind, to identify the debt which the debtor designed paying, for obviously in the present case if West paid Wilson $1000, without an agreement or direction to apply it to the debt of Wilson and Herr, Wilson would have a right to apply it to a debt of his own; (as far as this case is concerned, we say he had a right to do it, for they do not claim the payment to themselves,) hence the necessity of a receipt. R. K. West says, speaking of this payment, "he has no receipts in his possession." Yet, E. M.

West in his deposition says: "I have seen receipts of D. C. Wilson to and in the possession of R. K. West. I have seen them within the last twelve months. I have no recollection of the amount of any of them. I don't know where they are at this time. They were receipts for so much money without *specifying on what account.*"

We find too in the record a receipt for $1000 in the Life In. & Trust Co. and Union Bank Bills, the subject of another claim, specially applicable to this draft. Under these facts we are fully justified in holding that this sum was paid, not to Wilson and Herr as claimed, but to the private and individual account of David C. Wilson, and that R. K. West had no receipt for it as a payment on the draft of $2723.49.

The claim of $1000 paid October, 1841, is sustained by the receipt of David C. Wilson, applying it to this draft and is not contested, although we are constrained to say the evidence is very strong that it was designed to be applied to the account of June 25, 1841. Daffin and E. M. West, in their depositions, both speak this way, and this was the decided impression of D. C. Wilson.

The item of $243 is put to both the accounts of 1840 and 1841. It will be allowed to the oldest account, the one secured by the mortgage notes.

The payments allowed on the draft of $2723.49, are $1000, October 23, 1841; $218 January 4, 1842, and $243 June, 1842. Giving credit for these with interest, and deducting this amount from the sum due on the draft with interest to the date of the judgement, and there remains the sum of sixteen hundred and seventy-one dollars due, which defendants Wilson and Herr, have the right

in equity to have paid before the interests of Hayward can intervene, according to the decision and opinion we have made. We are then of opinion that the complainant has not made out or sustained his position, that the debt due and secured by the mortgage was paid and satisfied before the judgement of foreclosure was rendered.

The decree made herein on a former day of the term, will then stand and remain as the final decree of this. Court, and the petition of complainant will be dismissed.