## THE MARINE BANK OF BUFFALO, Appellant, *vs.* THE INTERNATIONAL BANK et al.

### TWO APPEALS FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard July 2.]                 [Decided July 12, 1859.

*Mortgage—Security—Lien—Time of payment—Notice— Mortgagor and Mortgagee.*

Where several notes, falling due at different times, are secured by the same mortgage, they are to be paid out of the mortgaged property, as a general rule, in the order of their maturity; the fund is not to be rateably distributed.

The case of *Wood vs. Trask*, 7 Wis., 566, considered and approved.

The maxim *prior in tempore potior in jure* in the absence of all special equities, applies to notes falling due at different times in the order of maturity, secured by the same mortgage, and such notes have priority of lien, in the absence of special equities, on the mortgaged fund, in the order of their maturity.

Where H. made eight promissory notes, falling due at different times, with interest annually, and secured the same by a mortgage, conditioned that the mortgagee might, upon failure to pay any of the moneys, &c., when due, elect upon notice, to have the whole sums become due and collectable; and the mortgagee has assigned the mortgage, and the five notes last to become due to I., and the remaining notes to M., and I. gave notice of his election, &c., as to his notes, and the holder of the other notes made no election; held that as I. was not the holder of all the notes secured by the mortgage, he could not give the notice of election, and thus make either the five notes due to him, or those held by M. due and collectable, unless M. also joined in the notice of election. Such an agreement imports that upon failure of the mortgagor to pay the installments or interest, as the same should become due, the mortgagee or his assigns may elect to have the *whole* sum secured by the mortgage become due and payable; but the mortgagee or his assigns, must elect to have the whole sum payable; and an election for payment of a part, is not in accordance with the condition of the covenant.

The complaint of the Marine Bank averred, that it was a corporation in the State of New York, located at Buffalo;

that the International Bank is also a corporation at the same place; that F. M. Hale made a mortgage to Cobb & Anderson, to secure the payment of $39,700, with interest, dated March 16, 1857; and also gave eight promissory notes, dated that day, and payable to Cobb & Anderson; one for $5,700, payable July 1st, 1857, one for $6,000, payable July 1st, 1858, and five others for $5000 each, payable June 1st, 1859, 1860, 1861, 1862, and 1863, respectively, and one for $3000, payable June 1st, 1864, with interest semi-annually, payable at the said Marine Bank; the mortgage, besides the usual conditions, contained a clause providing that the whole principal sum might become due if the interest was not paid; that the note for $5,700 had been paid by Hale; that on the 21st of March, 1857, Cobb & Anderson indorsed the notes due in 1858 and 1859, and transferred them to the Marine Bank; and it was agreed that these notes should have the preference over the remaining notes; that on the 24th of September, 1857, Cobb & Anderson, indorsed the notes due in 1860, 1861, 1862, 1863, and 1864, to the International Bank, which now holds them; that the latter bank had knowledge of the transfer of the first notes to the Marine Bank, and that they were to be first paid, and took the notes subject to the equities of the Marine Bank; that Hale had failed to pay the notes which had become due, and it prayed judgment, &c., that the first notes might be first paid, before the notes in the possession of the International Bank.

The International Bank answered the complaint, denying most of it for want of knowledge, and then denied that any portion of the mortgage had been assigned to the plaintiff by Cobb & Anderson; that they had taken the notes upon the indorsement of Cobb & Anderson alone; that the International Bank took the five notes transferred to it, subject to the rights and lien of the Marine Bank; that Cobb & Anderson assigned and transferred the mortgage to them, along with the notes, and thus conferred on the International Bank the right to sue for and enforce the payment of the money by means of the mortgage; and claimed that the five notes transferred to it should be first paid; and also prayed judgment to that effect.

During the pendency of the suit of the Marine Bank of Buffalo against the International Bank and others, the International Bank in the same court commenced a suit to foreclose the mortgage, setting up that it held the five notes last

Marine Bank vs. International Bank.

mentioned, and claiming that those notes should be first paid out of the proceeds of the mortgaged premises. It made Franklin M. Hale, Thomas Hale, and the Marine Bank of Buffalo, defendants. The complaint contained the usual allegations of a foreclosure case, and the rights of the International Bank were set up and claimed as in its answer to the complaint in the suit of the Marine Bank against the International Bank and others. The Marine Bank answered the complaint of the International Bank, and denied that the notes were indorsed to it on the responsibility of Cobb & Anderson; that the mortgage was a security for the payment of the notes, and that they had the preference over the notes held by the International Bank. Also denied that the latter had the sole right to foreclose the mortgage, &c.

On the trial the Marine Bank introduced the two notes assigned to it, and proved by J. W. Ganson, the cashier of the bank, that Cobb told him that the notes were secured by the mortgage at the time the bank took them, in connection with other notes; that these first fell due, and were first liable for payment. Cobb also swore that the cashier asked him if these were some of the notes received for the sale of land in Milwaukee? I told him they were. I told him they were the first notes stated in the mortgage to be paid, and that the land was sold for some $39,000. He asked if I wanted to assign the mortgage. I told him no, as there was a large amount back of these notes, and we wanted to raise money on the other notes, or pay debts with them. His reply, I think, was "that he did not know how that would work, he did not know about that. He would send for his brother John and have him come down." Mr. John Ganson decided that the notes were just as good without the mortgage as they were with it. Mr. James M. Ganson, the cashier, then told me that he would give Cobb & Anderson credit for the notes, provided that they would take a Buffalo Car Company note for $2,500. I told him that I didn't know about that, but I would counsel with my partners; I went and had a talk with them, and in the course of the day I went back to the bank and told Mr. Ganson that we would take the Car Company paper, and I gave him the notes. He gave Cobb & Anderson credit for the amount of the notes; I did not have the mortgage with me at the bank; Cobb & Anderson gave a check to the bank and took the Car Company note for $2,500, either that day or the day following; I think it was

that day; I think the mortgage had been shown to Mr. Ganson before the notes were discounted by the bank; Mr. Ganson, the cashier, was as familiar with the mortgage, I think, as I was.

On the 24th of September, 1857, I think, I sold the balance of the notes, covered by the mortgage, amounting to $23,000, to M. S. Hawley, president of the International Bank, for $19,500, and assigned the mortgage to the International Bank. On that day, or within a few days afterwards, Mr. Hawley asked me who owned the other three notes; I told him the Marine Bank of Buffalo. This was before the transfer of the notes and mortgage was finally completed. At the time the balance of those notes were transferred, and the mortgage was assigned to the International Bank, the International Bank gave to Cobb & Anderson a written agreement to the effect that, if the title to the premises described in the mortgage was made perfect in Franklin M. Hale, the maker of the notes and mortgage, Cobb & Anderson would be permitted to insert words "without recourse" over their indorsement on the notes.

*Cross-Examination.*—Cobb & Anderson were in good credit at the time the three first notes were transferred to the Marine Bank. I can't say whether Cobb & Anderson were considered responsible to a large amount; they were considered good. I don't think that the Marine Bank took those three first notes on the personal responsibility of Cobb & Anderson, and not on the mortgage; I think the bank took them as well on the responsibility of the mortgage as on that of Cobb & Anderson, and Ansel R. Cobb. The bank required the indorsement of Cobb & Anderson, and A. R. Cobb.

At the time the understanding was arrived at with Mr. Hawley, as president of the International Bank, Mr. Hawley asked me who held the three first notes covered by the mortgage. I told him the Marine Bank. He made no reply. That was all the notice the International Bank had of the transfer of the first notes to the Marine Bank, that I know of. This was the night before the mortgage was assigned to the International Bank.

Mr. Hawley took the notes and mortgage home with him that evening—next evening there was an assignment of the mortgage made. There was no claim one way or the other, as to whether the entire mortgage was a security for the notes transferred to the International Bank; nothing was said about

it, but Mr. Hawley took the notes and mortgage home with him. At the time the mortgage was assigned to the International Bank, there was no claim made one way or the other, as to whether the entire mortgage was to be security for the notes transferred to the International Bank. Nothing was said one way or the other.

An affidavit was read at the hearing, to the effect that the International Bank served a notice on Franklin M. Hale, August 13, 1859, in and by which that bank elected to have all the notes secured by the mortgage become due and collectable instanter.

In the suit in which the International Bank is plaintiff, depositions of Herman S. Hawley and Myron S. Bush were taken on the part of the plaintiff.

*Herman S. Hawley* testified, in substance, that he was President of the International Bank, and on the 24th of September, 1857, bought of A. R. Cobb the five notes mentioned in and secured by the mortgage last to become due, and took a written assignment from Cobb, of the notes and mortgage, with an agreement to procure an assignment to be made and executed by all the mortgagees; that the five notes were indorsed by Cobb and Anderson, in blank, and delivered to him as president of the bank, on the 24th of September, 1857; that the formal assignment of said mortgage and five notes to said Hawley, as president, was delivered in pursuance of said memorandum the next day; that the credit of the firm was bad at the time of the transfer to the International Bank. At the time Cobb sold and delivered the five notes to the International Bank, he informed me that the three other notes he had sold to the Marine Bank of Buffalo, and Cobb said that by the provisions of the mortgage, if default should be made in the payment of one they would all become due and all share alike in case of foreclosure; Cobb also said that he had not given any assurance to the Marine Bank that the notes transferred to that bank should have priority over the notes sold to the International Bank; that Cobb and Anderson were considered good and responsible at the time of the transfer of the three notes to the Marine Bank; I had no notice of the terms and conditions on which those notes were sold to the Marine Bank; that subsequent to the transfer of the five notes to the International Bank, the cashiers of the respective banks had conversations with each other respecting these notes and mortgage, in one of which Ganson, the cashier,

claimed that the notes held by the Marine Bank had prefer-
ence and priority over those held by the International Bank,
as to payment out of the proceeds of the mortgaged premises;
that at the time of the transfer of the five notes to the Inter-
national Bank there was an arrangement to the effect that if,
on the mortgaged property there was no prior mortgage, and
it should be so ascertained within thirty days, that Cobb &
Anderson might then write "without recourse" over their names
as indorsers on the notes.   On the 21st day of March, 1857,
I would have taken the notes of the firm of Cobb & Anderson
for the sum of $20,000, on reasonable time, in any business
transaction; on the 21st of March I supposed them worth
over $100,000; on the 24th of September I believe they were
bankrupt.

The Buffalo Car Company was not good on the 21st of
March, 1857; that company failed about the 2d March, 1857.

Cobb, at the time of the transfer of the five notes, assured
me the mortgaged property was good security for all the notes
mentioned in the mortgage.   At no time prior to the first of
July, 1858, did Ganson claim priority for the notes held by
the Marine Bank.

*On cross-examination*, Hawley stated that the considera-
tion of the transfer of the five notes to that bank, was a previ-
ous indebtedness of A. R. Cobb and Cobb & Anderson, and
that Cobb then stated that he had failed and was worse than
nothing.

*Myron T. Bush* testified, in substance, as to the purchase
of the five notes; execution of the assignment to the Inter-
national Bank, the same as Hawley; also, as to the represent-
ations which Cobb made at the time; that the Marine Bank
held the other three notes, but that in law all would share
alike in the proceeds of the mortgaged property.

The circuit court found the following facts:

1. It is admitted that the notes and mortgage were made
and executed by Franklin M. Hale to Cobb & Anderson on
the 16th day of March, 1857.

2d. That on the 21st day of March, 1857, Cobb & Ander-
son indorsed to the Marine Bank of Buffalo, the two notes
set forth in their complaint, for a valuable consideration, and
which were both secured by the mortgage; no part of the
mortgage was formally assigned at the time the notes were
transferred to the bank, but I think the fact is fully establish-
ed that they were to remain under the protection of the mort-

gage, and that the bank was entitled to the benefit of that security. I do not think that the testimony establishes a formal agreement between Cobb & Anderson and the bank, that the latter should have priority; and if the bank is entitled to priority, it must be simply on the principle that the law annexes that right to the transfer of a note or bond secured by mortgage which embraces other notes or installments than the one assigned.

3. Afterwards, and on the 24th day of September, 1857, the said Cobb & Anderson transferred and delivered to the International Bank, the remaining five notes, and a formal assignment of the mortgage. The president of the institution conducted the negotiation, and knew the fact at the time that the three first notes had been previously transferred to the Marine Bank.

4. Each of the two banks claim, in the pleadings, that they had a special agreement by which they were entitled to a priority, but I can perceive nothing in the testimony to sustain such allegations.

The court also found, as conclusions of law:

1. I am of opinion that both the banks are entitled to the benefit of the mortgage, and the only question to be decided is whether the Marine Bank shall have priority in the order of payment *pro tanto*, or whether the proceeds of the mortgage sale shall be applied to the payment of all the notes held by both banks *pro rata*.

2. This question has been ruled both ways, and the conflict in the authorities leave us without reliable precedent. I think that a rule may be deduced from *The State Bank vs. Tweedy*, 8 Black, R. 447, and the *U. S. Bank vs. Covert*, 13 Ohio, 240, which it will be safe to apply here. I have no doubt but the general principles laid down in the first of these cases, applies to the foreclosure of mortgages and the appropriation of payments in Wisconsin, as truly as they were there applied in such issue. In the Ohio case, however, the mortgage had a special stipulation by which the last note was to become due upon default in paying any of the prior ones, and as this circumstance happened it was there, held that the last note became due when the failure took place, although it had three years to run by its terms; and it was held that by this peculiar stipulation the assignees of both the notes first falling due, and of the last, must share *pro rata*.

In this case the stipulation of the mortgage was similar

only that it depended upon the option of the mortgagee to have the whole principal sum secured by the mortgage become due, if there was default in paying any part of it. Now the Marine Bank alleges in its complaint that upon the failure to pay the first of those two notes upon which they count, they made their election, and I think if they made their election, they made it to the whole extent of the mortgage, and for the benefit of all others interested therein. They must be bound by the terms of the mortgage, as it is entirely under its provisions they proceed, and the moment they elected that any part of the principal should become due, beyond what was unpaid, the whole amount became due, and the holders of the notes were entitled to share *pro rata*, in the proceeds of the foreclosure sale. This stipulation is express, that the mortgagee or his assigns may claim the whole principal as due when there is a failure to pay a part, and this must control, so that other assignees may join in the foreclosure if they desire, and reap the benefit of the forfeiture which by the express terms of the contract, involved the entire principal.

I am therefore of opinion that the two banks must share *pro rata*, in the proceeds of the mortgage sale if there should not be sufficient to pay both in full.

The judgment must be in conformity with the views here expressed.          ARTHUR McARTHUR, Judge.

The Marine Bank excepted to the finding, and to the judgment entered in accordance with this finding, and appealed to the supreme court, in both cases.

*Downer & La Due*, for the appellant.

*G. A. & J. C. Starkweather*, for the respondent.

*By the Court*, COLE, J. In the case of *Wood et al. vs. Trask et al.*, 7 Wis. R., 566, decided at the last term of this court, we held that where there are several notes falling due at different times, and secured by the same mortgage, they are to be paid out of the mortgaged property, as a general rule, in the order of their maturity. In that case an undivided half of a second note had been assigned by one of the mortgagees to the assignor of Bailey, and an action was

Marine Bank vs. International Bank.

brought by the mortgagees to foreclose the mortgage, on default in the payment of the first note, still held by them, when it became due; and it was insisted on behalf of Bailey, that the court should direct, in the judgment, that the sheriff pay out of the proceeds of the sale of the mortgaged premises, the notes *pro rata,* and that the first note was not entitled to any preference, though it first became due. But the court refused, and, as we thought, properly, to order the fund to be rateably distributed.

We were well aware that in some of our sister states, a contrary doctrine had obtained, and that it had been held that the fund arising from the sale of mortgaged premises, in case of a deficiency, should be rateably applied among the holders of the different notes or instruments; but when no special equities intervened to vary the rule, we thought the note or instrument first becoming due, was entitled to priority in payment. And, without enlarging upon the reasons that led us to this conclusion, it appeared to us that this priority must exist, under our statute, as the notes were the principal and the mortgage but an accessory, and the holder of the first note, upon default in its payment, had the right to commence his action, and subject the mortgaged premises to foreclosure and sale for the satisfaction of his debt. It seemed to us, therefore, that the maxim of *prior in tempore, potior in jure,* rightly applied, in the absence of all equitable considerations between the assignors and assignees, to changet his rule, or principle of law.

It is obvious to every one making the least examination, that the authorities are greatly in conflict upon the subject; and we therefore felt at liberty to adopt that rule which seemed to us most consonant to equity and the nature and meaning of the mortgage contract. The following are a few of the cases where the priority rule has been maintained: *Bank of United States vs. Covert,* 13 Ohio Rep., 240; *State Bank vs. Tweedy,* 8 Blackf., 448; *Stevenson et al. vs. Black,* Saxton, (N.

J.;) 338; *Page vs. Pierce,* 6 Foster, 321 ; *Mechanics Bank vs. Bank of Niagara,* 9 Wend. 410.

It is quite manifest that the rule laid down in the case of *Wood vs. Trask,* is decisive of the case under consideration, unless the view of the circuit court be correct, that the option given by the mortgage, and exercised by the International Bank, made all the notes secured by the mortgage due and payable at the same time, so that no priority could exist; or, unless the evidence shows that there was some understanding between the Marine Bank and the assignors of the notes at the time of the transfer, that the notes taken by that bank, should not have any preference in payment, as they otherwise would have had.

The mortgage in the present case was given by Franklin M. Hale, on the 16th day of March, 1857, for the purpose of securing the payment to the firm of Cobb & Anderson, of eight certain promissory notes, bearing even date therewith.

The first note was for the payment of the sum of five thousand seven hundred dollars, with interest, until paid, at the rate of ten per cent., and became payable on the first day of July, 1857; the second for the sum of six thousand dollars, with interest at ten per cent., until paid, was made payable on the first day of July, 1858; the third, given for five thousand dollars became due on the first day of June, 1859; the fourth, for five thousand dollars, payable on the first day of June, 1860; and so on ; the interest being made payable on all the notes semi-annually. The first three notes were indorsed by the firm of Cobb & Anderson on the 21st day of March, 1857, to the Marine Bank, which gave in exchange a note against the Buffalo Car Company, for twenty-five hundred dollars, and paid the balance out of the bank. On the 24th of September following the remaining five notes were transferred to the International Bank, and the mortgage was assigned to that bank about that time, by the mortgagees.

This mortgage contained a condition that, " in case of the non-payment of any sum of money, either principal, interest, or taxes, within thirty days after the same shall have become due, or any part thereof, then, in such case, the whole amount of said principal sum shall, at the option of the said parties of the second part, their representatives, or assigns, be deemed to have become due, and the same, with interest thereon at the rate aforesaid, shall, thereupon, be collected in a suit at law, or by foreclosure of this mortgage, in the same manner as if the whole of said principal sum had been made payable, at the time any such failure in any payment shall occur as aforesaid."

It appears that the first note taken by the Marine Bank was paid; and it will be borne in mind that the installment on the second note became due on the 1st day of July, 1858. On the 13th day of August, 1858, the International Bank, which held the five last notes, gave notice to the mortgagor that it elected to have all the notes held by it become due and collectable immediately, by reason of the non-payment, for more than thirty days, of some of the moneys secured by the mortgage. And at this time, it will be observed, that the second note was past due, and the interest remained unpaid on the third note.

The question now arises, what was the legal effect of the notice given by the International Bank on the 13th of August, that it elected to have the notes held by such bank become due and collectable, in consequence of the non-payment, for more than thirty days, of some of the moneys secured by the mortgage ? This will depend upon the nature and construction placed upon the stipulation, before cited, contained in the mortgage. By that stipulation, as we understand it, the parties to the mortgage agreed, that in case of the non-payment of any sum of money, either principal, or interest, or ˌtaxes, within thirty days after the same became due, then, in such

case, the whole amount of the principal secured by the mortgage, might at the option of the mortgagees, or their assigns, become due and collectable in the same manner as if the the whole principal sum had been made payable at the time any such failure in any payment, should occur. Although a failure might occur to make payment of any sum within thirty days from the time it became due, yet such failure did not, of itself, render the whole sum due. The mortgagees, or their assigns, had to exercise their election that the same should become due, and give notice thereof to the mortgagor before this result would follow. See the case of *Basse et al. vs. Gallegger et al.*, 7 Wis., 442. Was that done in the present case? We think not. True, the International Bank, which owned, and could control only a part of the sum secured by the mortgage, gave notice that it elected to have the amount coming to it, due and collectable immediately; but it had no authority to elect for the Marine Bank.

It may be said that the mortgagor would have no ground of complaint that a portion of the mortgage debt was called in. That an election that a part should only become due, when the whole amount might be called in, would be manifestly to his advantage, and he, therefore, ought not to be permitted to object to it. It might, however, be a great hardship to the mortgagor to have a portion of the debt called in, and a portion left outstanding on the mortgage. He might be able to raise the whole amount by giving a new mortgage, and discharging the old one, when he might not be able to raise a part of the money upon a second mortgage. But whether it was for the benefit of the mortgagor that a portion of the money should be called in, rather than the whole amount, it is a good and sufficient answer to this view of the case, to say, that the mortgagor did not agree that the mortgagees, or their assigns, might *elect to have a part of the*

*principal sum become due* on his failure to pay, within thirty days, any moneys secured by the mortgage. He agreed that in such a case, at their option, the *entire* sum might become due and collectable.

Now this condition in the mortgage is in the nature of a forfeiture, and ought to be strictly construed and followed. It is an entire and indivisible condition, which could only be exercised by all interested in the mortgage. As it appears to us, it was, therefore, not competent for the International Bank, to which a part only of the mortgage debt belonged, to exercise the election, without the co-operation of the Marine Bank.

No election having been made, according to the authority given by the mortgage, it is incorrect to assume that all the notes secured by the mortgage became due at the same time, and are entitled to a rateable distribution of the mortgage fund.

From the opinion of the circuit court contained in the printed case, it would seem that that court supposed this case fell within the principles of the case of the *United States Bank vs. Covert,* 13 Ohio, 240; but it is clearly and readily distinguishable from it. In the case in 13 Ohio, the condition of the mortgage was, that the $1800 note was to become due absolutely, upon a failure to pay the smaller one. It was not necessary for the mortgagee, or his assigns, to exercise any election, and give notice thereof to the mortgagor. The court, therefore, might well hold that both notes became due at the same instant. But though we adopt and approve the doctrine of that case, it will be observed that, in its facts and circumstances, it was dissimilar to the one at bar.

Upon looking into the evidence in the case, we think it certainly fails to show that there was any understanding between the assignors, Cobb & Anderson, that the Marine Bank, in taking the first three notes, were to loose that priority

which the law secured to them.   The very contrary conclusion is deducible from  the nature of the transaction between the parties, and all the evidence in the case.  It becomes unnecessary to  enlarge upon this point.  The Marine Bank holding the  notes first becoming due, are  entitled to preference, and must first be paid out of the mortgaged property.

There are two cases between the  same parties which were submitted on the same argument, and depend upon the same decision.  The judgments in  both cases must be reversed, and  the  causes  remanded for further proceedings in accordance with this  decision.