A. RICHARDSON, APPELLANT, v. O. D. WOODRUFF ET AL., APPELLEES.

Mortgage : NON-NEGOTIABLE BONDS: PARTIES. Where a non-negotiable bond, secured by mortgage, to which certain coupons payable to bearer for interest were attached, was endorsed and transferred for value before due, and without notice to the holder, who brought an action of foreclosure on said instruments, *Held,* That the holder took subject to the defenses between the original parties.

APPEAL from Johnson county district court. Heard below before BROADY, J.

*L. C. Chapman,* for appellant.

To establish usury in a loan made by an agent it must appear that the agent charged more than the legal rate, and that the principal authorized such unlawful charge, or in some way knowingly got some benefit from it. *Call v. Palmer,* 6 Sup. Ct. Rep., 301, affirming *Palmer v. Call,* 7 Fed. Rep., 737. *Bingham v. Myers,* 1 N. W. Rep., 613. *Jordan v. Humphrey,* 18 N. W. Rep., 450. *Ballinger v. Bourland,* 87 Ill., 513. *Boylston v. Bain,* 90 Ill., 285. *Kihlholz v. Wolf,* 103 Ill., 366. *Hoyt v. Pawtucket Sav. Inst.,* 110 Ill., 390. *Acheson v. Chase,* 9 N. W. Rep., 734.

*T. Appelget & Son,* for appellees.

The bond is not commercial paper, and the title of the holder is subject to any equities that might exist between the original parties. Comp. St., Neb., 1885, p. 388, § 1. Edwards' Prom. Notes, 165. *Fernon v. Farmer,* 1 Har. (Del.), 32. A mortgage given to secure non-negotiable paper has no commercial character, and there can be no innocent holder to the exclusion of equities. *Crane v. Turner,* 67 N. Y., 437. *Horstman v. Gerker,* 49 Pa. St., 283. *Twitchell v. McMurtrie,* 77 Pa. St., 383.

MAXWELL, CH. J.

On the 29th day of November, 1884, the plaintiff filed a petition in the court below stating his cause of action to be :

That on December 14th, 1872, O. D. Woodruff, defendant, executed and delivered, for a valuable consideration, unto one Byron Murray, Jr., one bond for $500, due five years after its date, payable to said Murray, with five

interest coupons of $50 each annexed thereto for the yearly interest, payable to the bearer, the bonds and coupons to draw twelve per cent interest after due. Also on same date, December 14th, 1872, said defendant O. D. Woodruff and wife executed unto said Murray a mortgage on S. E. ¼ 28–4–10, to secure said bond and interest coupons, the mortgage being duly recorded on December 17th, 1872, in book B of Mortgages, on page 74, in said Johnson county.

That $1,320.50 is due on said bond and notes.

That by a stipulation contained in the mortgage it was agreed that in case of foreclosure an attorney's fee of five per cent on the amount found due should be allowed and paid by defendants.

That the plaintiff Richardson is the legal owner and holder of said bond and coupons and the mortgage securing the same, except the first interest coupon of $50, due December 14th, 1873, which has been paid.

That the plaintiff Richardson became the owner and holder of the bond and four last coupons by purchase from said Murray before the maturity thereof or of any one of said four coupons.

That default has been made in the payment of said bond and coupons. Plaintiff prays an account, and a degree of foreclosure, and sale. Copies of bond, coupons, and mortgage are attached to the petition.

The mortgage recites that it is given to secure one bond for $500, payable to Byron Murray, Jr., with five coupon interest notes attached for fifty dollars each, payable to the bearer, for the annual interest on said bond.

In the amended answer the defendants say :

*First.* "They admit that O. D. Woodruff and E. H. Woodruff, his wife, executed the mortgage deed as made exhibit in said petition."

*Second.* They say that " O. D. Woodruff, one of the defendants, being in want of money, did, on or before

December 14th, 1872, make application to one B. F. Perkins, who represented himself as being the agent of parties in the East who had money to loan, of $500, for five years, and was informed by said Perkins that he could obtain said loan for him, the said O. D. Woodruff, but that the said Woodruff would be compelled to pay therefor the yearly interest of seventeen per cent per annum, together with a fee of $25, and all expenses of making and recording papers connected with said loan."

*Third.* "Whereupon this defendant O. D. Woodruff did then and there corruptly and usuriously contract and agree to and with said B. F. Perkins as the agent aforesaid, for the said loan of $500, at an annual rate of interest of seventeen per cent per annum."

Defendants, further answering, say that the bond, coupons, and mortgage mentioned in plaintiff's petition, and five other notes for $35 each, payable to P. D. Cheney, "were all given as the result of the above corrupt and usurious conduct," and for no other purpose.

"That defendants, in pursuance of the contract above set forth, have paid to P. D. Cheney the sum of $85, through the bank of Russell & Holmes, and to B. F. Perkins, as agent of the loaner, the sum of $25, being a part of the aforesaid corrupt and usurious contract."

*Fourth.* That the loan was not obtained from B. Murray, Jr., but was had and obtained from P. D. Cheney, through B. F. Perkins as agent; and that the bond, coupons, notes, and mortgage given therefor were executed to different parties, to enable the said Cheney to defeat the ends of justice and avoid the usury laws of Nebraska.

*Fifth.* Denies that plaintiff is a *bona fide* holder and owner of the bond, coupons, and mortgage sued upon.

*Sixth.* That more than ten years have elapsed since the conditions in said mortgage were broken, and the action is barred by the statute of limitations.

*Seventh.* That more than five years have elapsed since

the bond and coupons fell due, and action thereon is barred.

The plaintiff in the reply denied all the new matter stated in the answer.

The bond recites: "Know all men by these presents, that I, the subscriber, am justly indebted to Byron Murray, Jr., for value received, in the sum of five hundred dollars, payable five years after date * * * with twelve per cent after maturity. Dec. 14, 1872.

"O. D. WOODRUFF."

This was endorsed "B. Murray, Jr."

The four coupons attached to the bond are in the same form, except the time of maturity. The following is a copy of one of said coupons:

"$50.            TECUMSEH, NEB., Dec. 14, 1872.

"*Two* years after date, for value received, I promise to pay to the bearer Fifty Dollars at the office of P. D. Cheney, in Jerseyville, Illinois, with twelve per cent per annum after maturity.

"O. D. WOODRUFF."

The testimony tends to show usury in the original transaction; and that the plaintiff purchased the bond in question with the coupons attached in 1873. It will be observed that the bond is non-negotiable, and the only question for determination is, does the transfer of such bond by indorsement before due, for a valuable consideration to a *bona fide* purchaser without notice, pass such bond and coupons to the purchaser, free from equities between the original parties?

The bond in this case is payable to Byron Murray, Jr., personally, and not to bearer or order. It is not therefore commercial paper, and the holder takes it subject to all defenses between the original parties. 2 Daniel on Neg. Inst. 432. *Atchison v. Butcher*, 3 Kas., 104. A coupon bond consists of an obligation to pay a certain amount of

money at a future day, and annexed to it is a series of coupons, each of which is a promise for the payment of a periodical installment of interest. The contract between the payor and the holder is contained in the bond, but the coupons are furnished as convenient instruments to enable the holder to collect interest without presenting the bond, by separating and presenting the proper coupon which represents it, to another person at any time before its maturity. 2 Daniel on Neg. Inst., 426. Coupons are the primary engagements of their payor, and if payable at a bank, they are simply like notes so payable, but are not entitled to days of grace. Id. Whether the coupon be in the form of a note, bill, or check, or be a mere ticket or warrant of the amount and place of payment, the holder may sue on it without producing the bond; but he receives the sum due and payable according to the terms of the bond. It will be seen that the bond is the contract which governs the terms of the coupon; in other words, the coupon is an incident growing out of the main contract or bond, and dependent upon it for its validity. If the main contract was non-negotiable when assigned, the coupons then attached to said contract or bond were so also for the purpose of admitting the equities between the original parties. They were all upon the same sheet—in fact parts of the same contract—and the purchaser could not claim that he was deceived. This question was before the supreme court of Kansas, in *Atchison v. Butcher*, 3 Kas, 104, under a state of facts very similar to the case at bar, and the court held that the bonds and coupons were open to defenses between the original parties.

At common law, a bond being a sealed instrument, the consideration was presumed and could not be inquired into. But our statute (Comp. Stat., Chap. 81) has abolished private seals, and thus leaves the consideration of all contracts subject to inquiry, and the assignee of a non-negotiable instrument is in no better condition than the assignor. It is

very clear that the plaintiff took the bond and coupons in question subject to the defenses of the maker, and therefore subject to the defense of usury. The judgment of the court below must be affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.