Nashville Trust Co. *v.* Smythe.

*Nashville Trust Co. *v.* Smythe.

(*Nashville.*   March   3,   1895.)

1. BILLS AND NOTES.   *Rights of bona fide holders.*

*Bona fide* holders of promissory notes, secured by mortgage or
vendor's lien, may hold the security, as well as the notes, un-
affected by equities between prior holders and the mortgagor
or vendor.   (*Post, pp. 514–522.*)

Case cited and approved: 16 Wall., 271, 452.

2. SAME.   *Assignment of.*

The assignment of notes secured by vendor's lien is governed by
the same rule as the assignment of notes secured by mortgage.
(*Post, p. 523.*)

3. SAME.   *Assignees share pro rata.*

Assignees of several notes secured by mortgage or vendor's lien
share pro rata, if there is nothing in the contract of assign-
ment, or in the intention of the parties, to vary the rule.
(*Post, pp. 523–527.*)

Cases cited and approved: Graham *v.* McCampbell, Meigs, 52;
Roberts *v.* Francis, 2 Heis., 133; Andrews *v.* Hobgood, 1 Lea,
693; Ellis *v.* Roscoe, 4 Bax., 418; Ewing *v.* Arthur, 1 Hum.,
537; Wicks *v.* Caruthers, 13 Lea, 353; 38 Am. Dec., 438.

4. SAME.   *Priority among assignees.*

An agreement, in parol or writing, for preference in the security
given to an assignee of a part of a series of negotiable notes
secured by mortgage or vendor's lien, is valid as against sub-
sequent innocent assignees of other notes in the series.   (*Post,
pp. 527, 528.*)

Case cited and approved: Hicks *v.* Smith, 4 Lea, 459.

5. SAME.   *Assignment of mortgage or vendor's lien.*

The whole or any part of the mortgage or vendor's lien which
secures negotiable notes may be assigned to secure any part of

---

* The authorities as to the priority of notes falling due at different times, secured
·by the same mortgage, are collected in a note to Horn *v.* Bennett, 24 L. R. A., 800.—
REPORTER.

33—10 P

the notes which may be assigned, whether they be the first or last maturing, or the intermediate notes of the series. (*Post, p. 528.*)

6. SAME. *Not bona fide purchaser, when.*

An assignee of negotiable notes is not a *bona fide* purchaser as between himself and a prior assignee of other notes secured by the same mortgage or vendor's lien, with respect to rights in such security. (*Post, pp. 528–533.*)

Cases cited: 30 Minn., 4; 38 Maine, 496; 6 Cal., 478; 21 Vt., 331; 9 Pa. St., 32.

---

## FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. T. H. MALONE, Ch.

GRANBERY & MARKS for Nashville Trust Co.

SMITH & DICKINSON for Fourth National Bank.

JAS. S. PILCHER for Crowninshield.

SNODGRASS, Ch. J. The question in this case arises under a bill filed July 30, 1892, by the Nashville Trust Co., as agent of Mrs. Martha M. Reed, against J. C. Smythe *et al.*, to enforce lien for the purchase money evidenced by negotiable promissory notes, executed as consideration for certain real estate, sold and conveyed on the twentieth of December, 1890, by defendant, Everett, to Mrs. Marlin. There were one hundred and twenty-six of these notes for $20 each, except the last, which was for $25, payable

by Marlin and wife to Everett. They bore interest from date, and matured, respectively, on the first day of each succeeding month after their date, until the end of one hundred and twenty-six months. They were secured by lien, expressly reserved on the face of the deed, of Everett to Mrs. Marlin. The complainant alleged that Mrs. Reed became the owner of forty of said notes, maturing on and after April 1, 1898. The bill was filed on her behalf, and that of all other holders of said notes, and sought to sell the real estate for the amounts due on all. Other note holders came in by petition, among them Miss C. L. S. Crowninshield, as guardian of C. G. and Caroline Underhill, and James S. Pilcher. They alleged that thirty of said notes, the thirteenth to the forty-second, inclusive, were assigned by said Everett to C. L. S. Crowninshield, as said guardian, on January 22, 1891, to secure the payment of $366.67 she, on that day, lent Everett; that at that time Everett was the owner of the entire series of notes, and that in the assignment of said thirty notes a preference was given over the other notes as to the vendor's lien to secure the same. The instrument giving the preference was in writing, and was as follows:

"NASHVILLE, TENN., January 22, 1891.

"Twelve months after date we promise to pay to the order of Miss C. L. S. Crowninshield, as guardian of C. G. and Caroline C. Underhill, three hundred and sixty-six dollars and sixty-seven cents

($366.67) for value received, having pledged on deposit as collateral security for the payment of this note thirty notes out of the series of one hundred and twenty-six notes given by A. J. Marlin and Ella May Marlin for lot number thirty-one in B. F. Brown's subdivision. Said thirty notes being numbers thirteen to forty-two, inclusive, of said series, and preference is given to said thirty notes over the other notes of the said series as to the vendor's lien to secure the same.

" (Signed)."

These petitioners show that the remainder of said sixty-five notes held by said guardian and Jas. S. Pilcher were also held as collateral on said loan for $366.67, and that all of said sixty-five notes, after satisfying said loan of $366.67, were the property of James S. Pilcher; and they asserted priority for the thirty notes. Proof was taken, and it appeared that, at the time of the execution of this instrument, Everett was the owner of all the notes of the series, all of which were transferred by him, before maturity for valuable considerations, after January 22, 1891, the date of the assignment quoted, and no other preferences were attempted to be given. The assignees of the other notes had no actual notice that the preference had been given as to the thirty notes assigned to Miss Crowninshield. The property was sold, and the amount brought was insufficient for the payment of all the notes. The Chancellor decreed that no preference should be al-

lowed to petitioner Crowninshield, guardian, and that all the note holders were entitled to share equally in the proceeds of the sale.

Petitioners Crowninshield and Pilcher appealed, and assign as error that the Court did not decree that, as to so much as was due to C. L. S. Crowninshield on said note for $366.67, she was entitled to be first paid out of the proceeds of the property, basing said assignment on the following propositions of law:

"*First.*—A vendor of lands who holds a series of notes given for the purchase money, where a lien is expressly retained upon the face of the deed, or a mortgagee who holds a number of notes which are secured by mortgage, in assigning one or more of such notes, has the power, by parol contract, to give to the assignee of such note or notes a preference as to payment out of the proceeds of the property, and the subsequent assignees of the other notes can take no higher rights than the vendor himself had; and citing *Menken* v. *Taylor*, 4 Lea, 445; *Hicks* v. *Smith*, 4 Lea, 457; *Hill* v. *McLean*, 10 Lea, 107; *Christian* v. *Clark*, 10 Lea, 630.

"*Second.*—The right and power of a vendor or mortgagee to give a preference as to the vendor's or mortgagee's lien by parol contract, in the assignment of a part of the secured notes made at a time when the vendor or mortgagee is the owner and holder of all the other notes, is a rule of property in Tennessee, citing *Nichols* v. *Levy*, 5

Wallace, 438; *Gelpecke* v. *Dubuque*, 1 Wall., 176; *Lee Co.* v. *Rogers*, 7 Wall., 181; *Chicago* v. *Skeldon*, 9 Wall., 50, and averring that the assignment of the notes in question, made January 22, 1891, when Everett held all other notes, wherein the preference was given to Miss Crowninshield, guardian, etc., was a contract, which, in effect, embodied the rule established in the cases in 4 and 10 Lea, cited above, and the same was and is a rule of property as to all such contracts made since said decisions."

The question of the case therefore involved in this assignment is, whether the assignee of the last assigned notes, they being negotiable promissory notes taken before maturity without actual notice of prior assignment and lien contract, and for valuable considerations, took them subject to any equity between the vendor and vendee of the land or the prior assignee of the first notes assigned. The assignment of error treats it as though it were only a question whether the assignor passed his rights; and it is assumed, that being settled affirmatively, that the subsequent assignee takes no higher right than the assignor himself had.

In support of this assumption and contention, appellants lay down two propositions: That the assignee of a mortgage or deed of trust does not occupy the position of an assignee of commercial paper, but takes and holds the same subject to all the equities that could be urged against it in the hands of the original owner. Citing *Olds* v. *Cummings*, 31 Ill.,

188; *Walker* v. *Dement*, 42 Ill., 272; *Cramer* v. *Willetts*, 61 Ill., 481; *Haskell* v. *Brown*, 65 Ill., 29; *Temple* v. *Whittier*, 117 Ill., 282; 7 N. E. Rep., 642; 44 N. W. Rep., 393; *Harrison* v. *Burlingame*, 48 Hun, 212.

And that the privileged character of negotiable paper does not extend to a mortgage by which it is secured. Citing *Oster* v. *Mickley*, 35 Minn., 245 (28 N. W. Rep., 710); *Johnson* v. *Carpenter*, 7 Minn., 176; *Hostetter* v. *Alexander*, 22 Minn., 559; *Blumenthal* v. *Jussoy*, 29 Minn., 177 (12 N. W. Rep., 517); *Richardson* v. *Woodruff*, 20 Neb., 132 (29 N. W., 308); *Crane* v. *Turner*, 67 N. Y., 437; *Horstman* v. *Gerker*, 29 Pa. St., 283; *Twitchell* v. *McMurtrie*, 77 Pa. St., 383; *Atchison* v. *Rutchie*, 3 Kans., 104; *Temple* v. *Whittier*, (Ill.) 7 N. E. Rep., 642; *Fermon* v. *Farmer*, 1 Har. (Del.), 32; Edwards on Prom. Notes, 165; 2 Daniel on Negotiable Inst., 432.

These propositions will be found advanced and maintained in many of the cases cited, to which more could be added, if necessary. They are based, to some extent, on a failure to discriminate between the case of a mortgage to secure a debt expressed merely in the face of the mortgage, or to secure accounts or other non-negotiable debts, and that of a mortgage to secure negotiable paper. Respecting those which hold that the same rule prevails where the debts secured are negotiable notes, they are based upon the theory that, although the mortgage notes

are negotiable, the mortgage itself is only assignable in equity, and, therefore, the assignee, having to resort to equity to enforce his rights, is compelled to do equity towards the mortgagor, and allow him all the rights of defense he had against the mortgagee. Courts so holding make no distinction between mortgages securing negotiable and non-negotiable paper.

But this view Mr. Jones, in his work on Mortgages (5th Ed., Sec. 838), says and shows is contrary to the general doctrine; and that the assignment of negotiable paper carries with it the security of the mortgage, and is unaffected by the equities between the mortgagor and the mortgagee. This latter he declares to be the generally accepted doctrine. (Sec. 840.) This has been recognized and declared by the Supreme Court of the United States. *Carpenter* v. *Longman,* 16 Wall., 271.

In that case, Judge Swayne, who delivered the opinion of the Court, calls attention to the distinction between the assignment of claims secured which were negotiable and non-negotiable, and to the confusion which has resulted from ignoring the character of claims secured by lien or mortgage. He thoroughly explodes the fallacy that an assignment of such negotiable paper for a valuable consideration, before maturity, without notice, does not carry to the assignee a right superior to that of the assignor. "The transfer of the note," he says, "carries with it the security, without any formal assign-

ment or delivery, or even mention of the latter.
If not assignable at law, it is clearly so in equity.
When the amount due on the note is ascertained in
the 'foreclosure proceeding, equity recognizes it as
conclusive, and decrees accordingly. Whether the title
of the assignee is legal or equitable is immaterial.
The result follows irrespective of that question. The
process is only a mode of enforcing a lien. All
the authorities agree that the debt is the principal
thing and the mortgage an accessory. Equity puts
the principal and accessory upon a footing of equality,
and gives to the assignee of the evidence of the debt
the same rights in regard to both. There is no de-
parture from any principle of law or equity in reach-
ing this conclusion. There is no analogy between this
case and one where a chose in action standing alone
is sought to be enforced. The fallacy which lies
in overlooking this distinction has misled many able
minds, and is the source of all' the confusion that
exists. The mortgage can have no separate existence.
When the note is paid, the mortgage expires. It
cannot survive for a moment the debt which the
note represents. This dependent and incidental re-
lation is the controlling consideration, and takes the
case out of the rule applied to choses in action
where such relation of dependence exists. *Accessorium
non ducit, sequitur principale.*" This case was fol-
lowed and approved by the same Court in the case
of *Kenicot* v. *The Board of Supervisors of Wayne
County,* 16 Wall., 452.

The whole subject will be found treated and cases collected in the nineteenth chapter of Mr. Jones' work on Mortgages before referred to. We do not deem it necessary to go into a more extended citation or discussion. It is sufficient to say, that we have no hesitation whatever in holding that such assignee of such notes does stand on higher grounds than the assignor, both in respect to the note assigned and to its mortgage security. If this were a question, therefore, merely between the assignee of the note and the payor of the note who had paid it to the assignor before the assignment, there would be no question that the right of the assignee would be superior, although the assignor's right would, of course, be inferior, or rather the assignor's right to collect the note out of the payor would not exist. It remains to inquire later on whether this concession is a settlement of the question involved in this case. Before reaching that question, however, it is proper to consider the rights of parties generally under such assignments of debts secured by vendor's lien or mortgage.

Counsel for appellants treats, properly, the assignment of notes secured by vendor's lien as governed by the same rule as the assignment of notes secured by mortgage, the two being analagous, and governed by the same principles, so far as the question under consideration is concerned; but, as has been shown, he erroneously treats the question as though there were no distinction in the character of claims as-

signed. On the general subject the law of the case is very fully cited, and the observation is just that there is, perhaps, no question on which there is greater conflict of authority than that relating to the rights of different assignees of a series of notes which are secured by mortgage, vendor's, or other liens. There are three different views taken by the Courts, and many decisions can readily be found to support each view.

The Supreme Court of Arkansas has clearly set forth this matter in the following language and citations: "One class holds that the notes shall be paid in the order of their assignment. *McClintic* v. *Wise*, 25 Grant, 448; *Cullum* v. *Erwin*, 4 Ala., 422; *Grigsby* v. *Hair*, 25 Ala., 327; *Waterman* v. *Hunt*, 2 R. I., 293. Another, that the notes should take precedence in the order of their maturity. *Mitchell* v. *Badew*, 36 Mo., 526, 530; *Sargent* v. *Howe*, 21 Ill., 148; *Vansant* v. *Allmon*, 23 Ill., 30; *Koester* v. *Burke*, 81 Ill., 436; *Bank* v. *Tweedy*, 8 Blackf., 447; *Doss* v. *Ditmars*, 70 Ind., 451; *Bank* v. *Bank*, 9 Wis., 57, 64; *McVay* v. *Bloodgood*, 9 Port. (Ala.), 547; *Richardson* v. *McKin*, 20 Kan., 346, 350; *Hinds* v. *Mooers*, 11 Iowa, 211; *Walker* v. *Schrieber*, 47 Iowa, 529; *Wilson* v. *Wayward*, 6 Fla., 171, 190; *Kyle* v. *Thompson*, 11 O. St., 616; *Winster* v. *Bank*, 33 O. St., 250. And a third class, that the proceeds should be applied pro rata in part payment of the several notes, irrespective of their dates of maturity or assignment.

*Donley* v. *Hays*, 17 Serg. & R., 400, 404; Cowden's Appeal, 1 Pa. St., 278; Mohler's Appeal, 5 Pa. St., 418, 420; Perry's Appeal, 22 Pa. St., 43, 45; *Crattan* v. *Wiggins*, 23 Cal., 16; *Dixon* v. *Clayville*, 44 Md., 575, 578; *English* v. *Carney*, 25 Mich., 178, 181; *McCurdy* v. *Clark*, 27 Mich., 445, 448; *Parker* v. *Mercer*, 6 How. (Miss.), 320, 324; *Cage* v. *Iler*, 5 Smedes & M., 410; *Pugh* v. *Holt*, 27 Miss., 461; *Andrews* v. *Hobgood*, 1 Lea, 693; *Bank* v. *Beard*, 49 Tex., 363; *Delespine* v. *Campbell*, 52 Tex., 4; *Wilson* v. *Eigenbrodt*, 30 Minn., 4; 13 N. W. Rep., 907; *Penzel* v. *Brookmire*, 51 Ark., 105 (10 S. W. Rep., 15)."

The rule adopted in Tennessee is that the assignees of the several notes share pro rata, if there is nothing in the contract of assignment, or in the intention of the parties, to vary the rule. *Graham* v. *Campbell*, Meigs, 52; *Roberts* v. *Francis*, 2 Heis., 133; 1 Lea, 693; 4 Bax., 418; 1 Hum., 537; 13 Lea, 353.

This rule is in accord with the great weight of authority. Among the cases above cited, to which many others might be added in affirmance of the rule as to equality of lien of note holders, we call special attention to *Parker* v. *Mercer*, 6 Howard, 320, as reported in 38 Am. Dec., 438.

To this case the editor of the American Decisions appends a most valuable and elaborate note, in which many cases are collected. The question and cases are thus stated:

"Several notes may be secured by one mortgage, or deed of trust, and, when so secured, may be assigned to different persons. The question then arising is, which note is entitled to precedence in payment out of the proceeds of the security? The answers to this question are irreconcilable, and may be arranged under three classes:

"1. Those which, like the principal case, affirm that the proceeds should be applied pro rata to the several notes, irrespective of their dates of maturity or of assignment, on the ground that each note, according to the proportion it bears to the whole debt, is secured by the whole mortgage, and continues so secured, whether assigned or not, in the absence of any stipulation to the contrary: *Keyes* v. *Wood,* 21 Vt., 331; *Pattison* v. *Hull,* 9 Cow., 747; *Phelan* v. *Olney,* 6 Cal., 478; *Donley* v. *Hays,* 17 Serg. & R., 400; *Betz* v. *Heebner,* 1 Pen. & W., 280; Hancock's Appeal, 34 Pa. St., 155; *Cooper* v. *Ullmann,* Walk. Ch., 251; *English* v. *Carey,* 25 Mich., 178; *McCurdy* v. *Clark,* 27 *Id.*, 445; *Wilcox* v. *Allen,* 36 *Id.*, 160; *Dixon* v. *Clayville,* 44 Md., 573; *Cage* v. *Iler,* 5 Smedes & M., 410; *Henderson* v. *Herrod,* 10 *Id.*, 631; *Jefferson College* v. *Prentiss,* 29 Miss., 46; *Bank of England* v. *Tarleton,* 23 *Id.*, 173; *Stevenson* v. *Black,* Sax., 338; *Page* v. *Pierce,* 26 N. H., 317; *Ewing* v. *Arthur,* 1 Hum., 536; *Andrews* v. *Hobgood,* 1 Lea, 693; *Smith* v. *Cunningham,* 2 Tenn.

Ch., 568; *Tinsley* v. *Boykin*, 46 Tex., 592; *Paris Exchange Bank* v. *Beard*, 49 *Id.*, 358.

"2. Those which affirm that, in the event of the assignment of the notes, or of any of them, the assignees take precedence over the assignor with respect to the notes retained by him, and that, as between several assignees, they are entitled to precedence in the order of their several assignments: *McClintic* v. *Wise's Administrator*, 25 Gratt., 448; *Grigsby* v. *Hair*, 25 Ala., 327; *Salzman* v. *His Creditors*, 2 Rob. La., 241; *Barkdull* v. *Herwig*, 30 La. An., 618; *Waterman* v. *Hunt*, 2 R. I., 298.

"3. Those which treat several notes secured by one mortgage as having precedence in the order in which such notes mature: *Richardson* v. *McKim*, 20 Kan., 346; *Wilson* v. *Haywood*, 6 Fla., 171; *Vansant* v. *Allmon*, 23 Ill., 30; *Funk* v. *Reynolds*, 33 *Id.*, 481; *State Bank* v. *Tweedy*, 8 Blackf., 447; *Murdock* v. *Ford*, 17 Ind., 52; *Isett* v. *Lucas*, 17 Iowa, 503; *Grapengether* v. *Fejervary*, 9 *Id.*, 163; *Mitchell* v. *Laden*, 36 Mo., 526; *Thompson* v. *Field*, 38 *Id.*, 320; *Ellis* v. *Lamme*, 42 *Id.*, 153; *Wood* v. *Trask*, 7 Wis., 566; *Marine Bank* v. *International Bank*, 9 *Id.*, 57; *Lyman* v. *Smith*, 21 *Id.*, 674.

"Of course, there may be special equities arising out of the assignments, or out of the intention of the parties as manifested therein; and when this is the case, the general rule of law will be considered inapplicable, and the special equities will be recognized and enforced. It will be seen from the

foregoing citations, that the conflict of decisions on this subject is remarkable; that the cases falling within the first and those falling within the third class, are so nearly equal that no decided preponderance appears. Those belonging to the second class are less numerous."

It will be observed that all these cases recognize the right of the vendor in the one case or mortgagee in the other, to give a priority among notes secured by liens in a vendor's deed, or in a mortgage, accordingly as he may contract, with any assignee. This doctrine is well recognized in Tennessee. Here it is also held that such an assignment is good as between the assignor and the assignee, and that it need not be in writing, as appears to be the general rule. *Hicks* v. *Smith*, 4 Lea, 459. In this connection, it is proper to say that, to the extent noted, and only to that extent, have the Tennessee cases gone. It has not been established as the law of this State, and, therefore, of course, not as a rule of property, that the transfer of a negotiable promissory note secured by mortgage, made in connection with contract giving to such assignee a prior lien, will vest in such assignee an equity superior to that of a subsequent assignee of one of said notes, who is a purchaser for value, and without notice of the former assignment and lien contract. The two cases cited in 4 Lea, and urged as holding that doctrine, were not cases of assignments to purchasers for value, but were assignments to pay

pre-existing debts. So far, therefore, the question here presented is an open one in this State.

We return now to a discussion of that question. Without regard to conflict or difference of opinion in cases cited, it appears that several questions are definitely settled, the principal one with which we are concerned being that the vendor or mortgagee may by contract, in writing or parol, assign the whole or any part of the mortgage or vendor's lien to secure any part of the notes assigned, whether they be the first or last maturing, or the intermediate notes of any series.

It has been seen, also, that without respect to the question of the effect of the assignment of a portion of one note, or of a part of a series of notes secured in a mortgage (conditions involving other and different considerations), many cases assert the proposition that an assignment when made of a single note, though negotiable and the entire debt secured, does not carry the equity of the mortgage security, so as to prevent an assertion of the equities between the original parties.

We have, however, shown that the weight of authority is, and the clear rule of reason is, that as between the original parties, the vendor and the vendee and the mortgagor and mortgagee, the assignment of such a negotiable note by vendor or mortgagee may vest in the assignee a right superior to that of the assignor, the vendor or mortgagee.

There is, however, a different condition of fact,

which requires the assertion of a different equity, between the subsequent assignee of one of a series of negotiable notes without actual notice of a prior assignment with lien of contract priority, as between the two assignees, than that which would prevail between such an assignee and the mortgagor.

It does not follow that, because the assignee of one of a series of mortgage notes, which had been transferred and delivered to him by the mortgagee, and which had been paid by the mortgagor before such transfer and delivery, takes such note freed of all equities of the mortgagor, that he would, therefore, take it free from all equities of a prior assignee of another note of the same series, which had been transferred with a preference lien contract.

In the first case, the assignee's right would undoubtedly be superior to that of the mortgagor, because, as between these parties, the note itself is a single and perfect obligation. If the mortgagor had paid it off, he should have taken it up, and not left it in the hands of the mortgagee with power to transfer to one who might be a *bona fide* purchaser before maturity upon a valuable consideration, thus enabling the mortgagee to give to such *bona fide* purchaser a perfect title secured by the mortgage, upon which the purchaser had a right to rely, without actual notice of anything to the contrary, and without any condition of facts which would put him upon inquiry and charge him with notice.

When the assignee found such note so secured

34—10 P

still in the hands of the mortgagee apparently un-
paid, he had the right to assume that it was un-
paid, and no duty devolved upon him, as between
him and the payor, to make further inquiry.   But
such is not the rule if condition of facts requiring
its application do not exist—as, between a subsequent
and a prior assignee of one of a series of negotia-
ble notes secured by the same mortgage.

If the mortgagee holding any part of said notes
proposed to assign them to another assignee, and at
the same time to give to such assignee a preference
over the lien of all other notes to the amount of
those to be assigned, the assignee has notice that
the note proposed to be indorsed to him is one of
a series of notes secured by the same deed; he is
presumed to know the law that the mortgagee can
give to another assignee priority of lien.   As a mat-
ter of fact, he knows that the mortgagee either has
the other notes in his own hands unassigned, or that
they are out of his possession and in the hands of
others claiming them with or without preference of
lien.   He may not know the actual fact that any
such notes have been assigned, or he may not be
informed of it at the time by the assignor, but the
mortgage deed itself, securing a number of notes,
gives him notice that all are outstanding.   He is
charged, therefore, with constructive notice of another
prior assignment, if one has been made, for he can
demand of the mortgagee the production of the other
notes of the series, and, if the mortgagee cannot

produce them, he will know that they either have or may have been assigned, and, being presumed to know the law, will know that they may have been assigned under contract giving preference of lien. He is, therefore, charged with constructive notice of what, upon such investigation, he might have discovered. If, for instance, he calls upon the mortgagee to know where the other notes are, and the mortgagee produces them unassigned, he could, of course, then buy those of the series proposed to be sold to him without danger of subjecting himself to loss on account of prior equity. If the mortgagee failed to produce the other notes, but insisted that they were not transferred to others, and that no prior liens had been given, the assignee could, but only at his peril, take the notes proposed to be assigned to him. The mortgage itself was notice of the existence of the other notes, and his presumed knowledge of the law is that some of them may have been assigned with lien preferences. These conditions require him, so far as the equities between him and the prior assignees are concerned, to ascertain, before purchasing, whether any prior assignment had been made, and whether, in connection with it, a superior lien had been, by contract, given to any prior assignee. A failure to make such inquiry is at the peril of such assignee. If he purchases one or more of the series of such notes without such inquiry, and loses the benefit expected therefrom, by reason of prior assignment of lien, it is his own fault. He was not, as between himself

and a prior assignee, about whose rights the facts and the law require inquiry, a *bona fide* purchaser. *Wilson* v. *Eigenbrodt*, 30 Minn., 4; *Moore* v. *Ware*, 38 Maine, 496; *Phelan* v. *Olney*, 6 Cal., 478; *Keyes* v. *Wood*, 21 Vt., 331; *Roberts* v. *Halstead*, 9 Pa. St., 32.

Upon the theory, therefore, that the assignees of such of the one hundred and twenty-six notes as were assigned after the transfer of the thirty-two notes and prior lien to Miss Crowninshield, were not *bona fide* purchasers without notice of such assignment, we hold that her equity is superior to theirs, and she is entitled to have those notes fully paid before any portion of the proceeds of the sale is applied in satisfaction of the other notes.

The argument that this holding impairs the negotiability of paper is not well founded. The conclusion itself is based upon the fact that purchasers of such notes (parts of a series secured in a mortgage) are charged with notice that the others may have been, or may be, assigned under a special contract giving priority. Such a result may be avoided by mortgage drawn in such form as to prevent preferential assignments. Where this is not done, however, it is clear that the Courts, under the rules of law established, are compelled to give these assignments effect according to the contract and intention of the parties.

The decree of the Chancellor is, therefore, re-

versed, and decree will be entered here in accordance with this opinion. The costs of the Court below will be apportioned between the parties according to their respective interest in the notes, and the costs of this Court will be paid by the appellees.